[No. S124286. June 6, 2005.]

FRANK SNOWNEY et al., Plaintiffs and Appellants, v.
HARRAH'S ENTERTAINMENT, INC., et al., Defendants and Respondents.

1056

## Counsel

Schreiber & Schreiber, Edwin C. Schreiber and Eric A. Schreiber for Plaintiffs and Appellants.

Fulbright & Jaworski, Robert W. Fischer, Jr., Joshua D. Lichtman, Alisha M. Lee and Andrea K. Pallios for Defendants and Respondents.

Robin S. Conrad; Robbins, Russell, Englert, Orseck & Untereiner, Roy T. Englert, Jr., Alan E. Untereiner, Max Huffman and Alice W. Yao for Chamber of Commerce of the United States as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**BROWN, J.**—In this case, a California resident filed a class action against a group of Nevada hotels for failing to provide notice of an energy surcharge imposed on hotel guests. Although these hotels conduct no business and have no bank accounts or employees in California, they do advertise heavily in California and obtain a significant percentage of their business from California residents. These advertising activities include billboards located in California, print ads in California newspapers, and ads aired on California radio and television stations. These hotels also maintain an Internet Web site and toll-free phone number where visitors or callers may obtain room quotes and make reservations. We now consider whether, based on these activities, California courts may exercise personal jurisdiction over these hotels, and conclude that they may.

## I.

Defendants Harrah's Las Vegas, Inc., Harrah's Laughlin, Inc., Harrah's Operating Company, Inc. (HOC), Rio Properties, Inc., and Harveys Tahoe Management Company, Inc. (collectively defendants), own and operate hotels in Nevada. Plaintiff Frank Snowney is a California resident. In 2001, plaintiff reserved a room by phone from his California residence at one of the hotels owned and operated by defendants. To make the reservation, plaintiff gave the reservation agent his credit card number. At the time plaintiff made the reservation, the agent told him that the room would cost $50 per night plus the room tax. When plaintiff paid his bill at checkout, however, the bill included a $3 energy surcharge.

Plaintiff filed the instant class action against defendants and other entities[1] on behalf of himself and other "persons who were charged an energy surcharge as an overnight hotel guest in one of the defendant's hotels, yet were never given notice that there was an energy surcharge and/or what such charge would be." In the complaint, plaintiff alleged that defendants charged him and other guests an energy surcharge during their stays at hotels owned and operated by defendants without providing notice of these charges during the reservation or check-in process. He further alleged that, in doing so, defendants charged more than the advertised or quoted price. His complaint

---

[1] These other entities are Harrah's Entertainment, Inc. (HEI), Rio Hotel & Casino, Inc., Harveys Casino Resorts, Harrah's Reno Holding Company, Inc., Rio Vegas Hotel & Casino, Inc., Harrah's Management Company, and Harveys P.C., Inc. The Court of Appeal affirmed the trial court's dismissal as to these defendants, and Snowney did not petition for review of, and does not appear to challenge, this portion of the court's ruling.

alleged causes of action for: (1) fraudulent and deceptive business practices in violation of Business and Professions Code section 17200 et seq.; (2) breach of contract; (3) unjust enrichment; and (4) violations of Business and Professions Code section 17500 et seq.

In response, defendants and other entities filed a motion to quash the summons for lack of personal jurisdiction. In support of the motion, defendants submitted a declaration from Brad L. Kerby, the corporate secretary of HEI. Kerby stated that defendants were incorporated in either Nevada or Delaware and maintained their principal place of business in Nevada. According to Kerby, defendants conducted no business in California and had no bank accounts or employees in California. Kerby, however, acknowledged that HOC was licensed to do business in California and that Harrah's Marketing Services Corporation (HMSC), a wholly owned subsidiary of HOC, operated offices in California to "assist customers who contact those offices" and "attempt[ed] to attract a limited number of high-end gaming patrons to Harrah's properties."

In opposition, plaintiff submitted several declarations, a transcript of Kerby's deposition, and various exhibits. This evidence established that defendants: (1) advertised extensively to California residents through billboards in California, California newspapers, and California radio and television stations; (2) had a joint marketing agreement with National Airlines, which served Los Angeles and San Francisco, and advertised in the airline's print media; (3) maintained an interactive Web site that accepted reservations from California residents, provided driving directions to their hotels from California, and touted the proximity of their hotels to California; (4) accepted reservations from California residents through their Internet Web site and a toll-free phone number listed on the site and in their advertisements; (5) obtained a significant percentage of their patrons from California through reservations made through the toll-free number and Web site; and (6) regularly sent mailings to those California residents among the four to six million people enrolled in their "Total Rewards" program. Plaintiff's evidence also confirmed that HMSC maintained several offices in California to handle reservations and market defendants' hotels.

The trial court granted the motion to quash for lack of personal jurisdiction. Specifically, the court found that plaintiff had failed to establish either general or specific jurisdiction. Plaintiff appealed.

The Court of Appeal reversed as to defendants, concluding that defendants had "sufficient contacts with California to justify the exercise of specific jurisdiction" Specifically, the court held that: (1) "by soliciting and receiving the patronage of California residents" through their advertising activities,

defendants "have purposefully directed their activities at California residents, have purposefully derived benefit from their contacts with California, and have established a substantial connection with this state"; (2) defendants' California contacts "are substantially connected to causes of action that challenge an alleged mandatory surcharge imposed on all hotel guests"; and (3) the exercise of jurisdiction over defendants would be fair and reasonable. In doing so, the court declined to follow *Circus Circus Hotels, Inc. v. Superior Court* (1981) 120 Cal.App.3d 546 [174 Cal.Rptr. 885] (*Circus Circus*), disapproved in part in *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 464 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*).

We granted review to determine whether the exercise of jurisdiction over defendants is proper.

## II.

■ "California courts may exercise personal jurisdiction on any basis consistent with the Constitution of California and the United States. (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant comports with these Constitutions 'if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate " 'traditional notions of fair play and substantial justice.' " ' ([*Vons*], *supra*, 14 Cal.4th [at p.] 444, quoting *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154] (*Internat. Shoe*).)" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 [127 Cal.Rptr.2d 329, 58 P.3d 2] (*Pavlovich*).)

■ "The concept of minimum contacts . . . requires states to observe certain territorial limits on their sovereignty. It 'ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.' " (*Vons, supra*, 14 Cal.4th at p. 445, quoting *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292 [62 L.Ed.2d 490, 100 S.Ct. 559] (*World-Wide Volkswagen*).) To do so, the minimum contacts test asks "whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92 [56 L.Ed.2d 132, 98 S.Ct. 1690], quoting *Internat. Shoe, supra*, 326 U.S. at pp. 316–317.) The test "is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." (*Kulko*, at p. 92.)

██ Under the minimum contacts test, "[p]ersonal jurisdiction may be either general or specific." (*Vons, supra,* 14 Cal.4th at p. 445.) Because plaintiff does not claim general jurisdiction, we only consider whether specific jurisdiction exists here.

██ "When determining whether specific jurisdiction exists, courts consider the ' "relationship among the defendant, the forum, and the litigation." ' (*Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414 [80 L.Ed.2d 404, 104 S.Ct. 1868], quoting *Shaffer v. Heitner* (1977) 433 U.S. 186, 204 [53 L.Ed.2d 683, 97 S.Ct. 2569].) A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' (*Vons, supra,* 14 Cal.4th at p. 446); (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' (*ibid.,* quoting *Helicopteros, supra,* 466 U.S. at p. 414); and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' (*Vons, supra,* 14 Cal.4th at p. 447, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472–473 [85 L.Ed.2d 528, 105 S.Ct. 2174] [(*Burger King*)].)" (*Pavlovich, supra,* 29 Cal.4th at p. 269.)

██ "When a defendant moves to quash service of process" for lack of specific jurisdiction, "the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction." (*Vons, supra,* 14 Cal.4th at p. 449.) "If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating 'that the exercise of jurisdiction would be unreasonable.' " (*Pavlovich, supra,* 29 Cal.4th at p. 273, quoting *Vons,* at p. 449.) Where, as here, " 'no conflict in the evidence exists . . . the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record.' " (*Vons,* at p. 449.) Applying these standards to the facts of this case, we conclude that California may exercise specific jurisdiction over defendants.

### A.

We first determine whether defendants purposefully availed themselves of the privilege of doing business in California. Based on defendants' purposeful and successful solicitation of business from California residents, we find that plaintiff has established purposeful availment.

██ " 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on' [its] contacts with the forum." (*Pavlovich,*

*supra*, 29 Cal.4th at p. 269, quoting *U.S. v. Swiss American Bank, Ltd.* (1st Cir. 2001) 274 F.3d 610, 623–624.) Thus, purposeful availment occurs where a nonresident defendant " 'purposefully direct[s]' [its] activities at residents of the forum" (*Burger King, supra,* 471 U.S. at p. 472), " 'purposefully derive[s] benefit' from" its activities in the forum (*id.* at p. 473), "create[s] a 'substantial connection' with the forum" (*id.* at p. 475), " 'deliberately' has engaged in significant activities within" the forum (*id.* at pp. 475–476), or "has created 'continuing obligations' between [itself] and residents of the forum" (*id.* at p. 476). By limiting the scope of a forum's jurisdiction in this manner, the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . ." (*Id.* at p. 475.) Instead, the defendant will only be subject to personal jurisdiction if " 'it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state.' " (*Pavlovich*, at p. 269, quoting *World-Wide Volkswagen, supra,* 444 U.S. at p. 297.)

■ Here, defendants' contacts with California are more than sufficient to establish purposeful availment. We begin by examining defendants' Internet contacts. To determine whether a Web site is sufficient to establish purposeful availment, we first look to the sliding scale analysis described in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (W.D.Pa. 1997) 952 F.Supp. 1119 (*Zippo*). (See *Pavlovich, supra,* 29 Cal.4th at p. 274.) "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. [Citation.] At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. [Citation.] The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." (*Zippo*, at p. 1124.)

Defendants' Web site, which quotes room rates to visitors and permits visitors to make reservations at their hotels, is interactive and, at a minimum, falls within the middle ground of the *Zippo* sliding scale.[2] In determining

---

[2] Snowney contends the site falls within the first *Zippo* category and establishes that defendants conduct business in California. Although we question this contention (see *Bell v. Imperial Palace Hotel/Casino, Inc.* (E.D.Mo. 2001) 200 F.Supp.2d 1082, 1087–1088 (*Bell*)

whether a site falling within this middle ground is sufficient to establish purposeful availment, however, courts have been less than consistent.

"Some courts have held that sufficient minimum contacts are established, and the defendant is 'doing business' over the Internet, where the defendant's website is capable of accepting and does accept purchase orders from residents of the forum state." (*Shamsuddin v. Vitamin Research Products* (D.Md. 2004) 346 F.Supp.2d 804, 810.) Other courts have suggested that " 'something more' " is necessary, such as " 'deliberate action' within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state." (*Millennium, supra,* 33 F.Supp.2d at p. 921; see also *Toys "R" Us, Inc. v. Step Two, S.A.* (3d Cir. 2003) 318 F.3d 446, 454 ["there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts"].) Other courts "have criticized *Zippo*'s emphasis on website interactivity" (*Shamsuddin,* at p. 810) and focus instead on "traditional due process principles" (*id.* at p. 811), asking whether the site expressly targets "residents of the forum state" (*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.* (W.D.Wis. 2004) 297 F.Supp.2d 1154, 1160). According to these courts, "Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state." (*Shamsuddin,* at p. 813; see also *Neogen Corp. v. Neo Gen Screening, Inc.* (6th Cir. 2002) 282 F.3d 883, 890 ["A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state"].)

We need not, however, decide on a particular approach here because defendants' Web site, by any standard, establishes purposeful availment. By touting the proximity of their hotels to California and providing driving directions from California to their hotels, defendants' Web site specifically targeted residents of California. (See *Burger King, supra,* 471 U.S. at p. 472.) Defendants also concede that many of their patrons come from California and that some of these patrons undoubtedly made reservations using their Web site. As such, defendants have purposefully derived a benefit from their

[holding that a hotel's Web site permitting visitors to make online reservations falls in the middle of the *Zippo* continuum]; *Millennium Enterprises v. Millennium Music, LP* (D.Or. 1999) 33 F.Supp.2d 907, 920 (*Millennium*) [holding that a Web site that permits visitors to purchase the defendants' merchandise falls in the middle of the *Zippo* continuum]), we need not resolve it here because defendants' California contacts clearly establish purposeful availment.

Internet activities in California (*id.* at p. 473), and have established a substantial connection with California through their Web site (*id.* at p. 475). In doing so, defendants have "purposefully availed [themselves] of the privilege of conducting business in" California "via the Internet." (*Enterprise Rent-A-Car Company v. U-Haul Internat.* (E.D.Mo. 2004) 327 F.Supp.2d 1032, 1042–1043 [holding that a Web site that specifically targeted the forum state and its residents established purposeful availment].)

Defendants' attempt to analogize their Web site to the site in *Bensusan Restaurant Corp. v. King* (S.D.N.Y. 1996) 937 F.Supp. 295, is unavailing. In *Bensusan*, the federal district court declined to exercise personal jurisdiction over the defendant based on his Web site. But, unlike the Web site at issue here, the site in *Bensusan* was wholly passive—not interactive—and did not specifically target forum residents. (*Id.* at p. 297.) Moreover, the defendant in *Bensusan*, unlike defendants here, conducted no business with forum residents through his Web site.

In any event, even assuming that defendants' Web site, by itself, is not sufficient to establish purposeful availment, the site in conjunction with defendants' other contacts with California undoubtedly is. Aside from their Web site specifically targeting California residents, defendants advertised extensively in California through billboards, newspapers, and radio and television stations located in California. They also listed a toll-free phone number for making reservations at their hotels in their California advertisements and on their Web site, and many of their California patrons used this number to make reservations. Finally, defendants regularly sent mailings advertising their hotels to selected California residents. As a result of these promotional activities, defendants obtained a significant percentage of their patrons from California. Thus, defendants purposefully and successfully solicited business from California residents. In doing so, defendants necessarily availed themselves of the benefits of doing business in California and could reasonably expect to be subject to the jurisdiction of courts in California.[3]

---

[3] (See *Shute v. Carnival Cruise Lines* (9th Cir. 1990) 897 F.2d 377, 382–383 (*Shute*) [holding that advertising in local media, through brochures sent to travel agents in the forum, and through promotional seminars in the forum established purposeful availment], revd. on other grounds in *Carnival Cruise Lines, Inc. v. Shute* (1991) 499 U.S. 585 [113 L.Ed.2d 622, 111 S.Ct. 1522]; *Shoppers Food Warehouse v. Moreno* (D.C. 2000) 746 A.2d 320, 331 (*Shoppers Food Warehouse*) [holding that the defendant "conducted 'purposeful, affirmative activity within the' " forum "by purposefully directing advertisements for its . . . stores at a potential customer base in the" forum]; *Oberlies v. Searchmont Resort, Inc.* (2001) 246 Mich.App. 424, 433 [633 N.W.2d 408, 415] (*Oberlies*) [finding purposeful availment because "[the] defendant engaged in widespread advertising in" the forum "that particularly targeted" forum "residents"].)

In reaching this conclusion, we reject defendants' contention that no purposeful availment exists here because the subject matter of their contracts with California residents resides exclusively in Nevada. Unlike the cases cited by defendants, which held that a few contracts with California residents could not, by themselves, establish purposeful availment,[4] our finding of purposeful availment is not premised solely on defendants' contracts with forum residents. Rather, our finding is premised on defendants' purposeful and successful solicitation of business within California. Indeed, "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." (*Burger King, supra,* 471 U.S. at p. 476.) Where, as here, "[t]he actions taken by" defendants "to solicit business within" California "were clearly purposefully directed toward residents of" California, "it is irrelevant where" their hotels are located. (*Shute, supra,* 897 F.2d at p. 382; cf. *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 149–150 [127 Cal.Rptr. 352, 545 P.2d 264] [finding purposeful availment even though the accident giving rise to the action did not occur in the forum state].)

We also find inapposite *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853 [126 Cal.Rptr. 811, 544 P.2d 947], and *Spirits, Inc. v. Superior Court* (1980) 104 Cal.App.3d 918 [164 Cal.Rptr. 101]. Unlike defendants here, neither of the defendants in *Archibald* and *Spirits* engaged in extensive advertising that specifically targeted California residents. and resulted in numerous transactions with California residents. (See *Archibald,* at p. 864 [refusing to exercise jurisdiction over a hotel based solely on the activities of an independent travel agency that sold accommodations at the hotel to a California resident]; *Spirits, Inc.,* at p. 925 [refusing to exercise jurisdiction based solely on the defendant's purchase of products from a California distributor and the defendant's proximity to California].)

Finally, we do not find persuasive the purposeful availment analysis in *Circus Circus, supra,* 120 Cal.App.3d 546. In *Circus Circus,* the plaintiffs brought a negligence action against the defendant, a Nevada hotel, after the theft of their property during their stay at the hotel. (*Id.* at p. 552.) In refusing to exercise jurisdiction over the defendant, the Court of Appeal spent the bulk of its opinion finding that no general jurisdiction existed and that the controversy did not relate to or arise out of the defendant's contacts with

---

[4] (See *Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 907 [73 Cal.Rptr.2d 105] [finding no purposeful availment based solely on the defendants' execution of "sales, security and escrow agreements" with a forum resident]; *Doe v. Unocal Corp.* (9th Cir. 2001) 248 F.3d 915, 924 [finding no purposeful availment based solely on the defendant's contractual relations with a forum resident]; *McGlinchy v. Shell Chemical Co.* (9th Cir. 1988) 845 F.2d 802, 816 [finding no purposeful availment based solely on the defendant's contract with a forum resident].)

California.[5] Nonetheless, the court also concluded that the defendant did not avail "itself of any benefits afforded by the State of California" or seek the " 'protection of its laws' " based on the defendant's maintenance of a toll-free phone number for reservations (*Circus Circus* at p. 569) and "advertising in California newspapers, a service paid for and rendered without any involvement of the forum state's laws or public facilities" (*ibid.*).

■ By focusing solely on the defendant's involvement with California's laws or public facilities, however, *Circus Circus* applied an overly narrow interpretation of the purposeful availment test. Purposeful availment may exist even though the defendant did not invoke the legal protections of the forum state. Indeed, purposeful availment exists whenever the defendant purposefully and voluntarily directs its activities toward the forum state in an effort to obtain a benefit from that state. (See *ante*, at pp. 1062–1063.) And, to the extent *Circus Circus Hotels, Inc. v. Superior Court, supra*, 120 Cal.App.3d 546, holds that advertising activities targeted at forum residents can never establish purposeful availment, we disapprove of it. In any event, defendants' promotional activities—which were far more extensive than the promotional activities at issue in *Circus Circus*—unequivocally establish that defendants purposefully and voluntarily directed their activities at California residents.[6] Accordingly, we conclude that defendants purposefully availed themselves of the privilege of conducting business in California.

## B.

We now turn to the second prong of the test for specific jurisdiction (the relatedness requirement), and determine whether the controversy is related to or arises out of defendants' contacts with California. We find that it is.

■ In *Vons*, we carefully examined the relatedness requirement. After reviewing the relevant cases and the rationale behind the specific jurisdiction

---

[5] In *Vons*, we rejected the proximate cause test applied by *Circus Circus* in determining whether the plaintiff's claims related to or arose out of the defendant's contacts with the forum. (*Vons, supra*, 14 Cal.4th at p. 464.) We apparently left undisturbed its analysis of purposeful availment.

[6] Our finding of purposeful availment does not rely on the " 'economic reality' " test rejected in *Circus Circus, supra*, 120 Cal.App.3d at pages 570–571. Rather, it relies on defendants' purposeful and successful solicitation of business within California—and not on the mere foreseeability that California residents will patronize businesses of a neighboring state.

doctrine, we declined to apply a proximate cause test[7] (*Vons, supra,* 14 Cal.4th at pp. 462–464) or a "but for" test[8] (*id.* at pp. 467–469). Following a detailed discussion of the relevant law and policy considerations, we also rejected the "substantive relevance" test proposed by Professor Brilmayer.[9] (*Id.* at pp. 469–474.) Instead, we adopted a "substantial connection" test and held that the relatedness requirement is satisfied if "there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim." (*Id.* at p. 456.)

In adopting this test, we observed that "for the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related." (*Vons, supra,* 14 Cal.4th at p. 452.) "[T]he more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." (*Id.* at p. 455.) Thus, "[a] claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction." (*Id.* at p. 452.) Moreover, the "forum contacts need not be directed at the plaintiff in order to warrant the exercise of specific jurisdiction." (*Id.* at p. 455.) Indeed, " ' "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." ' " (*Id.* at p. 455, quoting *Third Nat. Bank in Nashville v. Wedge Group Inc.* (6th Cir. 1989) 882 F.2d 1087, 1091.)

Amicus curiae Chamber of Commerce of the United States urges us to reconsider *Vons* and, instead, adopt the substantive relevance test. It, however, presents nothing new. Indeed, in *Vons,* we carefully considered and rejected the very reasons cited by amicus curiae for adopting the substantive relevance test. (*Vons, supra,* 14 Cal.4th at pp. 469–475.) We therefore continue to apply the substantial connection test established in *Vons.*

Applying this test, we find that plaintiff's claims have a substantial connection with defendants' contacts with California. Plaintiff's causes of action for unfair competition, breach of contract, unjust enrichment, and false advertising allege that defendants failed to provide notice of an energy surcharge during the reservation process and in their advertising. Thus, plaintiff's causes of action are premised on alleged omissions during defendants' consummation of transactions with California residents and in their

---

[7] The proximate cause test asks whether "the alleged injury was proximately caused by the contacts in the forum state." (*Vons, supra,* 14 Cal.4th at p. 462.)

[8] The "but for" test asks "whether the injury would have occurred 'but for' the forum contacts." (*Vons, supra,* 14 Cal.4th at p. 467.)

[9] The substantive relevance test asks whether "conduct constituting a forum contact that took place *in* the forum normally would be pleaded under state substantive law applicable to the plaintiff's cause of action." (*Vons, supra,* 14 Cal.4th at p. 469.)

California advertisements. Because the harm alleged by plaintiff relates directly to the content of defendants' promotional activities in California, an inherent relationship between plaintiff's claims and defendants' contacts with California exists. Given "the intensity of" defendants' activities in California, we therefore have little difficulty in finding a substantial connection between the two. (*Vons, supra,* 14 Cal.4th at p. 453.) The fact that many of defendants' contacts with California do not directly arise out of plaintiff's transaction with defendants is immaterial. (See *Logan Productions, Inc. v. Optibase, Inc.* (7th Cir. 1996) 103 F.3d 49, 53 [refusing to limit the relevant contacts to "those contacts directly arising out" of the defendant's "deal with" the plaintiff].) By purposefully and successfully soliciting the business of California residents, defendants could reasonably anticipate being subject to litigation in California in the event their solicitations caused an injury to a California resident. (See *Burger King, supra,* 471 U.S. at pp. 475–476.)

Cases holding that claims for injuries suffered during a plaintiff's stay at a hotel or resort are not related to and do not arise from that hotel's or resort's advertising in the forum state are inapposite.[10] As an initial matter, most, if not all, of these cases did not apply the substantial connection test established in *Vons*. In any event, even if we agree with the holdings in these cases,[11]

---

[10] (See, e.g., *Circus Circus, supra,* 120 Cal.App.3d at p. 569 [holding that a tort claim arising out of a burglary of the plaintiff's hotel room does not relate to or arise out of that hotel's advertising in the forum]; *Breschia v. Paradise Vacation Club, Inc.* (N.D.Ill. 2003) 2003 WL 22872128, p. *4 [holding that a claim arising out of the plaintiff's slip and fall at a resort did not relate to or arise out of that resort's advertising in the forum]; *Bell, supra,* 200 F.Supp.2d at p. 1088 [holding that a claim arising out of the plaintiff's slip and fall at a hotel did not relate to or arise out of that hotel's advertising in the forum]; *Dagesse v. Plant Hotel N.V.* (D.N.H. 2000) 2000 DNH 9, 113 F.Supp.2d 211, 218 [same]; *Imundo v. Pocono Palace, Inc.* (D.N.J. 2002) 2002 WL 31006145, p. *2, revd. on reconsideration on another ground in 2002 WL 31006143 [same]; *Decker v. Circus Circus Hotel* (D.N.J. 1999) 49 F.Supp.2d 743, 749 [same]; *Smith v. Sands Hotel & Casino* (D.N.J. 1997) 1997 U.S. Dist. LEXIS 4335 [1997 WL 162156], p. *6 (*Smith*); *Hurley v. Cancun Playa Oasis International Hotels* (E.D.Pa. 1999) 1999 WL 718556, p. *1 [same]; *Oberlies, supra,* 633 N.W.2d 416–417 [holding that a claim arising out of the plaintiff's slip and fall at a ski resort did not relate to or arise out of the resort's advertising in the forum].)

[11] Indeed, several courts have reached the opposite conclusion—that injuries suffered during a stay at a hotel or resort *are* related to and *do* arise from that hotel's or resort's advertising in the forum state. (See, e.g., *Nowak v. Tak How Investments, Ltd.* (1st Cir. 1996) 94 F.3d 708, 715–716; *Mallon v. Walt Disney World Co.* (D.Conn. 1998) 42 F.Supp.2d 143, 147; *O'Brien v. Okemo Mountain, Inc.* (D.Conn. 1998) 17 F.Supp.2d 98, 101; *Rooney v. Walt Disney World Co.* (D.Mass. 2003) 2003 WL 22937728, p. *4; *Sigros v. Walt Disney World Co.* (D.Mass. 2001) 129 F.Supp.2d 56, 67; *Shoppers Food Warehouse, supra,* 746 A.2d at p. 336; *Tatro v. Manor Care, Inc.* (1994) 416 Mass. 763, 770–771 [625 N.E.2d 549, 553–554]; *Radigan v. Innisbrook Resort & Golf Club* (1977) 150 N.J. Super. 427, 429 [375 A.2d 1229, 1231].)

they are distinguishable. Unlike the injuries suffered by the plaintiffs in those cases, the injury allegedly suffered by plaintiff in this case relates *directly* to the content of defendants' advertising in California. As such, the connection between plaintiff's claims and defendants' contacts is far closer than the connection between the claims and contacts alleged in the cases cited above. Indeed, some courts that have refused to exercise jurisdiction where a plaintiff suffered an injury during a stay at a hotel or resort acknowledge that they would have reached a different conclusion if that plaintiff had alleged false advertising or fraud. (See *Smith, supra,* 1997 WL 162156 at p. *6 [suggesting that claims of false advertising or fraudulent misrepresentation would meet the relatedness requirement]; *Oberlies, supra,* 633 N.W.2d at p. 417 ["A foreign corporation that advertises in Michigan can reasonably expect to be called to defend suits in Michigan charging unlawful advertising or alleging that the advertising, itself, directly injured a Michigan resident"].) Accordingly, we conclude that plaintiff has met the relatedness requirement.

## C.

 Having concluded that plaintiff has satisfied the purposeful availment and relatedness requirements, we now determine "whether the assertion of specific jurisdiction is fair." (*Vons, supra,* 14 Cal.4th at pp. 475–476.) In making this determination, the "court 'must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." ' " (*Id.* at p. 476, quoting *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 113 [94 L.Ed.2d 92, 107 S.Ct. 1026].) "Where[, as here,] a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (*Burger King, supra,* 471 U.S. at p. 477.) In this case, defendants do not contend the exercise of jurisdiction would be unfair or unreasonable, and we see no reason to conclude otherwise. Therefore, we hold that defendants are subject to specific jurisdiction in California.

## III.

Accordingly, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.