Filed 9/27/13  McMenamy v. Colonial First Lending Group CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

| | |
|---|---|
| DIANA MᴄMENAMY et al., | C070642 |
| Plaintiffs and Appellants, | (Super. Ct. No. 77829) |
| v. | |
| COLONIAL FIRST LENDING GROUP, INC., et al., | |
| Defendants and Respondents. | |

Defendants Colonial First Lending Group, Inc., (Colonial) et al. challenge the personal jurisdiction of the California courts over an action by plaintiffs Diana McMenamy et al. for fraud, breach of fiduciary duty, negligent misrepresentation, breach of contract, and violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) arising out of the purchase of their home in Grass Valley, California.

Plaintiffs sued defendants Colonial and its loan officer Devin Jones alleging that defendants repeatedly misrepresented that plaintiffs' monthly loan payments, inclusive of principal, interest, property taxes, and insurance "would be very close to a maximum

1

amount of $1,800 over the life of the loan," when in fact the monthly payments are $2,225.

Appearing specially, defendants moved to quash service of summons on the ground the court lacks personal jurisdiction over them because they "had no contacts with plaintiffs in California, let alone the minimum contacts necessary to satisfy the due process requirements of the U.S. Constitution." (Code Civ. Proc., § 418.10, subd. (a)(1).) Defendants, who are not licensed to do business in California, claim they assisted plaintiffs with the refinance of their Idaho home, the proceeds of which were used to purchase the home in California, and referred plaintiffs to another mortgage broker that was licensed to do business in California for assistance in financing the California home.

The trial court concluded there is no evidence defendants were involved in the California transaction other than confirming that the proceeds from the Idaho refinance were available and dismissed plaintiffs' complaint. Plaintiffs appeal, contending the evidence established defendants originated the loan for their California home, had numerous communications with plaintiffs and plaintiffs' agents in California about both the refinancing of their Idaho home and the financing of their California home, and were paid a portion of the brokerage fees collected in connection with the purchase of the California home. For these reasons plaintiffs assert California has jurisdiction over defendants.

We shall conclude plaintiffs established a basis for personal jurisdiction by demonstrating that defendants actively assisted them in obtaining financing for their California home and were compensated for their efforts. Accordingly, we shall reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The evidence presented in support of and in opposition to the motion to quash established the following: Colonial is a mortgage brokerage firm, is incorporated in Utah, and its office is in Murray, Utah. Colonial is not licensed to do business in California. When Colonial "came across [loans] that it was unable to do," such as when

2

it was not licensed to do business in a particular state, it referred the loans to Flagship Financial Group (Flagship).

Jones, a lifelong resident of Utah, is a loan officer. At all relevant times he worked as an independent contractor for Colonial originating residential mortgage loans. During his tenure with Colonial, Jones referred approximately 10 to 20 loans to Heather Hodge, the loan processor at Flagship. He would personally deliver a paper copy of the file to Hodge and say, "This person needs a loan." Typically the referrals from Colonial were complete loan files. At her deposition, Hodge testified that if she needed additional information, she talked to Colonial's Vice President Adam Erikson or someone else at Colonial "because they were the originator of the loan." She "would never talk to the borrower."[1]

When loans were referred to Flagship by Colonial, Flagship paid Colonial First Business Development, LLC, a separate entity managed by the owners of Colonial and owned by their wives, "50 percent plus or minus 25 percent" of "the loan brokerage fee or loan origination fee" paid to Flagship at closing. Colonial First Business Development, LLC, in turn, paid to Jones approximately 65 percent of the fee received from Flagship, and the owners of Colonial First Business Development, LLC (i.e., the wives of the owners of Colonial), retained the rest.

In June 2008 plaintiffs moved from Idaho to California after plaintiff Michael McMenamy got a job in Grass Valley. Prior thereto, in May 2008, Jones cold called plaintiffs after receiving a lead through one of Colonial's lead systems. Jones initially spoke to plaintiff Diana McMenamy who told him she and her husband were looking to refinance their Idaho residence to get cash out so that they could purchase a home in

---

[1]   Hodge later testified somewhat inconsistently that she believed Flagship was the originator of the loan because "the loan funded through Flagship," and that Flagship was the mortgage broker on loans referred to it by Colonial.

California. During subsequent conversations with plaintiff Michael McMenamy, Jones gathered information relevant to both the refinance of the Idaho home and the purchase of the California home. Plaintiffs told Jones they could afford a loan payment of approximately $1,800 a month on the California home.

Jones and Colonial brokered the refinance of the mortgage on the Idaho home, which closed on July 22, 2008. Plaintiffs received $92,006.18 in cash as a result of the refinance, and a check for that amount was distributed at closing. Jones referred plaintiffs' California loan to Hodge at Flagship because Colonial was not licensed to do business in California.[2] Hodge recalled receiving the file from Jones. While she could not recall specifically what was in the file, she agreed that "when Colonial sent [her] the file, the information all had to be there in order for [her] to do something."

Plaintiffs' California real estate agent Georgann Russell had numerous communications with Jones concerning the financing of the California property and understood Colonial was acting as the mortgage broker for the California loan. According to Russell, Jones ordered the appraisal for the California property and provided her with the appraiser's contact information. He also worked with Russell and the escrow officer at Placer Title Company "to complete all of the documentation to close the sale and escrow" of the California property. At no time was Russell "informed that any person or entity other than . . . Jones at Colonial was acting as the mortgage broker for [plaintiffs]."

---

[2]   In his declaration, Jones represents that he informed Diana McMenamy in their initial conversation that neither he nor Colonial could broker the California loan but that he could refer her to another mortgage broker that was licensed to do business in California. Sometime thereafter, Diana McMenamy called Jones in Utah and said she wanted him and Colonial to broker plaintiffs' Idaho refinance.

4

On July 24, 2008, two days after the Idaho refinancing closed, Russell sent an email to Jones, inquiring: "We are trying to . . . schedule signing off buyer and seller and wondering when you expect to send loan docs to Placer Title in Grass Valley."

On July 27, 2008, Russell sent an email to the escrow officer at Placer Title, advising: "I received a call from Devin Jones . . . and he anticipates [the] loan docs will be here by Wednesday[, July 30, 2008]. I was wondering what your availability was for signing off the [plaintiffs]."

On July 31, 2008, Jones sent an email to Russell, stating:

"Our file is in line for docs to be drawn today, so they should be to the title company this afternoon.

"I spoke with [the escrow officer] regarding the $1,000 [security deposit paid on the California property] and they will disburse that money back to Michael at closing.[3]

"I will be leaving town this afternoon and will be back Monday. If you have any questions you may try to contact me on my cell phone . . . .

"You may also speak to my processor Heather Hodge . . . ."

On August 7, 2008, escrow for the California property closed. The buyer's closing statement for the California property identifies Flagship as the loan originator, loan processor, and mortgage broker.[4]

Plaintiffs sued Colonial and Jones in Nevada County Superior Court for fraud, breach of fiduciary duty, negligent misrepresentation, breach of contract, and violation of California's unfair competition law arising out of plaintiffs' purchase of their California home. Each of these causes of action is based on the allegation defendants

---

[3] Plaintiffs rented the California property for approximately one month before escrow closed, thus, it can be inferred the security deposit was paid in connection therewith.

[4] Jones denied he or Colonial participated in originating or closing the California loan. According to Jones, all such work was handled by Flagship.

misrepresented to plaintiffs that their monthly loan payments on the California home would be approximately $1,800 over the life of the loan, when in fact the monthly loan payments are $2,225.

Appearing specially, defendants moved to quash service of summons on the ground the court lacks personal jurisdiction over them because they "had no contacts with plaintiffs in California, let alone the minimum contacts necessary to satisfy the due process requirements of the U.S. Constitution." Defendants claimed Flagship, not Colonial, was the mortgage broker that originated the California loan, and Colonial was merely a referral source for the loan. According to defendants, all of their contacts with California were related to the refinance of the Idaho property.

The trial court dismissed the action for lack of personal jurisdiction, ruling "[o]n the whole, the evidence fails to show minimum contacts . . . ." The court found "the declarations submitted in opposition do not establish that defendants conducted any business in the state of California or engaged in any activity subjecting them to the personal jurisdiction of California." Rather, the court concluded the evidence "only show[s] that Mr. Jones was aware of the plaintiffs' intended use of the proceeds from the refinance of their Idaho home to make a down payment on their purchase of the home in California and that Mr. Jones assisted the plaintiffs in coordinating the delivery of the refinance proceeds in the Nevada County escrow that plaintiffs used to purchase their new home in California. . . . There is no evidence whatsoever that Mr. Jones was involved in the California transaction other than confirming that Idaho proceeds were available."[5]

---

[5]  Defendants' motion was initially heard on October 21, 2011. Prior thereto, the trial court issued a tentative ruling granting the motion and dismissing plaintiffs' complaint. At the hearing, however, the court granted plaintiffs' request for a 90-day continuance to allow them to conduct discovery "on the sole issue of the motion to quash . . . ." Thereafter, the parties filed supplemental briefs and supporting declarations. A hearing

DISCUSSION

" 'California courts may exercise personal jurisdiction on any basis consistent with the Constitution of California and the United States. (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " [Citations.]

" 'The concept of minimum contacts . . . requires states to observe certain territorial limits on their sovereignty. It "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." ' [Citations.] To do so, the minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' [Citations.] The test 'is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' [Citation.]

"Under the minimum contacts test, '[p]ersonal jurisdiction may be either general or specific.' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061-1062 (*Snowney*).) Because plaintiffs do not claim general jurisdiction, we consider only whether specific jurisdiction exists here.

" 'When determining whether specific jurisdiction exists, courts consider the " 'relationship[s] among the defendant, the forum, and the litigation.' " ' " (*Snowney, supra,* 35 Cal.4th at p. 1062.) A court may exercise specific jurisdiction over a nonresident defendant only if: (1) the defendant has purposefully availed himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's

was held on February 24, 2012. Prior thereto, the trial court issued a tentative ruling that was identical to the tentative ruling issued by the court in October 2011. Following the hearing, the trial court adopted the tentative ruling as its ruling.

7

contacts with the forum; and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice. (*Ibid.*)

A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden of demonstrating facts establishing a basis for personal jurisdiction. (*Snowney, supra,* 35 Cal.4th at p. 1062.) If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. (*Ibid*.)

" 'On review, the question of jurisdiction is, in essence, one of law. When the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence. [Citation.] Even then, we review independently the trial court's conclusions as to the legal significance of the facts. [Citations.] When the jurisdictional facts are not in dispute, the question of whether the defendant is subject to personal jurisdiction is purely a legal question that we review de novo. [Citation.]' [Citations.] The ultimate issue of whether an exercise of jurisdiction is fair and reasonable is a legal determination subject to de novo review on appeal. [Citation.]" (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 568.) Applying these standards to the facts of this case, we conclude that California may exercise specific jurisdiction over defendants.

We first consider whether defendants purposefully availed themselves of forum benefits. " ' "The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on" [its] contacts with the forum.' [Citations.] Thus, purposeful availment occurs where a nonresident defendant ' "purposefully direct[s]" [its] activities at residents of the forum' [citation], ' "purposefully derive[s] benefit" from' its activities in the forum [citation], 'create[s] a "substantial connection" with the forum' [citation], ' "deliberately" has

8

engaged in significant activities within' the forum [citation], or 'has created "continuing obligations" between [itself] and residents of the forum' [citation]. By limiting the scope of a forum's jurisdiction in this manner, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . .' [Citation.]" (*Snowney*, *supra*, 35 Cal.4th at pp. 1062-1063.)

In our view, defendants purposefully directed their activities at residents of the forum by playing an active role in assisting plaintiffs in obtaining a loan for their California home after plaintiffs moved to California. According to the evidence, Jones had numerous communications with plaintiffs while they were residing in California, as well as with plaintiffs' agents. Contrary to defendants' claim that all of these communications were necessary elements of Jones's work assisting plaintiffs with their Idaho refinance, the evidence reveals that Jones played a significant role in originating and closing the California loan. Among other things, he gathered information relevant to obtaining financing for the California home, arranged for the California home to be appraised, facilitated the preparation and delivery of loan documents, and took steps to ensure that plaintiffs received a credit at closing for the security deposit they paid when renting the California home prior to their purchase of the same. Significantly, plaintiffs introduced evidence that on July 31, 2008, Jones emailed Russell and informed her: "Our file is in line for docs to be drawn today, so they should be to the title company this afternoon." Because the Idaho refinance had closed *nine days earlier*, it would appear that Jones was facilitating the preparation of documents for the California loan. This conclusion is supported by Jones's statement in the same email that Russell could "speak to *my* processor Heather Hodge" in his absence. (Italics added.) As detailed above, Hodge was the loan processor at Flagship, and neither she nor Flagship had anything to do with the Idaho refinance. Thus, Jones's reference to Hodge makes plain that he is referring to the California loan. Jones's involvement in closing the California loan also is

confirmed by his statement in the same email, "I spoke with [the escrow officer for the California property] regarding the $1,000 [security deposit paid on the California property] and they will disburse that money back to Michael at closing." That security deposit related solely to the California loan and had nothing to do with the Idaho refinance.

Plaintiffs also introduced evidence that defendants purposefully derived a financial benefit from assisting plaintiffs in obtaining financing for their California home. (See *Snowney, supra,* 35 Cal.4th at p. 1063.) According to Colonial's Vice President Adam Erikson, when, as here, Colonial referred loans to Flagship, Flagship paid Colonial First Business Development, LLC, an entity managed by the owners of Colonial, owned by their wives, and with no employees of its own, a percentage of its brokerage fee or loan origination fee, and Colonial First Business Development, LLC, passed on a portion of that fee to the referring loan officer, in this case Jones. The fee paid to Colonial First Business Development, LLC, was for work performed by Colonial and Jones; that Colonial chose to have Flagship pay the fee to a shell entity does not mean that Colonial did not purposefully derive a benefit from assisting plaintiffs.[6]

That Colonial is not identified as the mortgage broker or loan officer in the loan documents for the California loan is not dispositive where, as here, the evidence shows Colonial and Jones played an active role in assisting plaintiffs in obtaining financing for their California home. Hodge's testimony at her deposition that Flagship originated the California loan because "the loan funded through Flagship" and that Flagship was the

---

[6]   Defendants' claim in their respondents' brief – that Colonial First Business Development, LLC, merely received a referral fee that was not part of the closing – is contradicted by the deposition testimony of Erikson, who, in addition to serving as a Vice President at Colonial, is one of Colonial First Business Development, LLC's managing agents. According to Erickson, Flagship paid Colonial First Business Development, LLC, a portion of "the loan brokerage fee or loan origination fee."

10

mortgage broker on the loan, likewise, does not change the fact that defendants played an active role in assisting plaintiffs in obtaining financing for the California home. We are concerned with conduct, not labels, and Hodge's characterization of defendants' actions is not evidence. Moreover, that Jones initially contacted plaintiffs while they resided in Idaho and plaintiffs thereafter "reached out to [defendants] in Utah" does not preclude the exercise of jurisdiction where, as here, defendants voluntarily proceeded to assist plaintiffs, whom they knew resided in California, in obtaining financing for their California home.

Defendants' suggest "[t]he record evidence . . . demonstrates that the [plaintiffs] were fully aware that Flagship Financial originated and brokered their California loan" prior to that loan closing. In support of their assertion, defendants cite to evidence that in July *2009*, nearly a year *after* the California loan closed, plaintiffs sought to refinance their California home through Flagship, not Colonial or Jones. Assuming for the sake of argument that plaintiffs' knowledge of Flagship's involvement in the initial financing of their California home is relevant, the evidence cited by defendants demonstrates only that plaintiffs were aware of Flagship one year *after* the loan in question closed.

Having concluded plaintiffs met their initial burden of introducing sufficient evidence defendants purposefully availed themselves of the benefits of doing business in California, we next consider whether " 'there is a substantial nexus or connection between the defendant[s'] forum activities and the plaintiff[s'] claim.' " (*Snowney, supra,* 35 Cal.4th at pp. 1067-1068.) Defendants' forum activities consisted of assisting plaintiffs in obtaining a loan for the California property, and plaintiffs claim that in the course of rendering that assistance, defendants repeatedly misrepresented the amount of the monthly payment plaintiffs would be required to pay under the loan. Because plaintiffs' claims arise out of defendants' forum activities, the exercise of specific jurisdiction is appropriate. (*Id.* at p. 1068.)

11

Finally, having determined that plaintiffs met their burden with respect to the first two requirements of the specific personal jurisdiction inquiry, we must consider whether the assertion of personal jurisdiction is fair. (*Snowney, supra,* 35 Cal.4th at p. 1070.) "In making this determination, the 'court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' " ' [Citations.] 'Where[, as here,] a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' [Citation.]" (*Ibid.*)

Defendants argue forcing them to defend in California would be unjust and unfair because they lacked sufficient contacts with California to support a finding of jurisdiction, and any contacts they did have related solely to the refinance of plaintiffs' Idaho home. We have concluded that defendants had significant contacts with California through their role in assisting plaintiffs in obtaining financing for plaintiffs' California home, and that the litigation bears a substantial connection to those contacts. Plaintiffs are California residents. The conduct at issue involved their California residence. The burden on defendants, Utah residents, to defend in California, while not inconsequential, is not great. Plaintiffs and other witnesses reside in California, and California is a short plane ride from Utah. Moreover, California has a strong interest in providing a forum to its residents. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 477.) In short, defendants have failed to demonstrate that the exercise of jurisdiction by the California courts in this matter would be fundamentally unfair.

Accordingly, we conclude the trial court erred in dismissing plaintiffs' complaint for lack of personal jurisdiction.

DISPOSITION

The order dismissing the complaint for lack for personal jurisdiction is reversed. Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


    BLEASE    , Acting P. J.


We concur:


    HULL    , J.


    MAURO    , J.