Filed 7/7/14; pub. order 8/5/09 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KIMBERLY PATRICE YOUNG et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>DAIMLER AG,<br><br>        Defendant and Respondent. | A135999<br><br>(County of Alameda<br>No. RG-10-509414) |

In this products liability action, the trial court granted a motion to quash service of summons for lack of personal jurisdiction filed by specially-appearing defendant Daimler AG, a German public stock company (Daimler). Appellants contend that the trial court's jurisdictional decision is erroneous, as a finding of general personal jurisdiction over Daimler is appropriate based on the substantial California contacts of current and former indirect subsidiaries of Daimler that are attributable to the German company under theories of agency. Finding the United States Supreme Court's recent decision in *Daimler AG v. Bauman* (2014) 571 U.S. ___ [134 S.Ct. 746] (*Bauman II*), dispositive on the jurisdictional issue and contrary to the arguments advanced by appellants, we affirm.

## I.  BACKGROUND

On August 29, 2008, Kimberly Patrice Young (Young) and her daughter, Keyona Chester (collectively, appellants), were driving a 2004 Jeep Cherokee in San Joaquin County, California, when the vehicle rolled over, causing the roof to collapse. As a result of this incident, Young sustained catastrophic injuries, rendering her a permanent quadriplegic. In addition, Young's daughter allegedly suffered both physical and

1

emotional harm. On April 13, 2010, appellants filed the instant action (complaint), claiming that the roof and restraint systems of the 2004 Jeep Cherokee were defectively designed and caused the injuries they sustained in the 2008 rollover.

The 2004 Jeep Cherokee at issue was designed, manufactured, and distributed by DaimlerChrysler Corporation (DCC), a former indirect subsidiary of Daimler. Thus, among others, the complaint named both Daimler and DCC as defendants. Daimler is a German *Aktiengesellschaft* (public stock company) that designs and manufactures Mercedes-Benz vehicles in Germany and has its principal place of business in Stuttgart. Prior to 1998, DCC was known as Chrysler Corporation. Following a 1998 agreement, Chrysler Corporation became an indirect subsidiary of Daimler (then known as DaimlerChrysler AG) and changed its name to DCC. DCC was at all relevant times a Delaware corporation with its principal place of business in Michigan. It ceased to be a subsidiary of Daimler in 2007, subsequently changing its name to Chrysler LLC. Daimler is not a successor-in-interest to either DCC or Chrysler LLC.[1]

Appellants personally served Daimler with the complaint in accordance with the Hague Convention. Subsequently, on April 7, 2011, Daimler filed a motion to quash service of summons for lack of personal jurisdiction. Specifically, Daimler asserted that there is no basis for personal jurisdiction (either general or specific) over Daimler in California.[2] General jurisdiction is lacking, Daimler averred, because it is not qualified,

---

[1] As is widely known, Chrysler LLC filed for bankruptcy in April 2009, becoming the first major American automaker to seek such protection since Studebaker in 1933. (See Rutenberg & Vlasic, *Chrysler Files to Seek Bankruptcy Protection*, N.Y. Times (May 1, 2009).) Although not part of our record on appeal, appellants report that DCC was subsequently dismissed from this action as part of its planned bankruptcy reorganization.

[2] Personal jurisdiction is "specific" when the suit "aris[es] out of or relates[s] to the defendant's contacts with the forum." (*Helicopteros Nacionales De Colombia v. Hall* (1984) 466 U.S. 408, 414, fn. 8 (*Helicopteros Nacionales*).) "General jurisdiction," in contrast, is appropriate over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (*Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) ___ U.S. ___, ___ [131 S. Ct. 2846, 2851] (*Goodyear*); see also *In re Automobile Antitrust Cases I and II* (2005) 135 Cal.App.4th 100, 108 (*Automobile Antitrust Cases*).) General jurisdiction, if

2

licensed, or authorized to do business in California; does not maintain any office, agency, or representative in California; does not have any officers, employees or agents working for it in California; has not appointed an agent for service of process in California; does not conduct advertising or solicitation activities in California; does not operate any sales or service network in California; does not have a California bank account; does not own, use, or possess any California real estate; and does not pay California taxes. According to Daimler, to the extent any Mercedes-Benz vehicles manufactured by Daimler in Germany are distributed and sold in California, such distribution and sales are conducted by companies separate and distinct from Daimler. (Compare *Goodyear, supra,* 131 S. Ct. at p. 2852.) In addition, Daimler argued that the facts do not support a finding of specific jurisdiction over Daimler in this case as Daimler did not design, manufacture, or distribute the 2004 Jeep Cherokee at issue.

Appellants opposed Daimler's motion to quash, arguing that Daimler was properly subject to both specific and general jurisdiction in California. For instance, appellants contended that specific jurisdiction was appropriate because the accident at issue was related to the California activities of DCC, Daimler's indirect subsidiary. With respect to general jurisdiction, appellants urged the trial court to follow the Ninth Circuit's recent decision in *Bauman v. DaimlerChrysler Corp.* (2011) 644 F.3d 909 (*Bauman I*), which found Daimler subject to general jurisdiction in California based on the extensive California contacts of Mercedes-Benz USA, LLC (MBUSA), an indirect subsidiary of Daimler. Because of its importance to the ultimate resolution of this appeal, we review this Ninth Circuit decision in some detail.

In *Bauman I*, twenty-two Argentineans filed suit against Daimler in the United States District Court for the Northern District of California, alleging that one of Daimler's subsidiaries—Mercedes-Benz Argentina—"collaborated with state security forces to kidnap, detain, torture, and kill the plaintiffs and/or their relatives during

established, "may bring the defendant before California courts even if the cause of action is unrelated to the defendant's activities in this state." (*Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 109.)

Argentina's 'Dirty War.' " (*Bauman I, supra,* 644 F.3d at p. 911.)  Since these claims did not arise out of any contacts Daimler might have had with California, the sole question at issue in *Bauman I* was whether the district court had general personal jurisdiction over Daimler.  (*Id.* at pp. 912, 919.)  The Ninth Circuit concluded that it did, based on Daimler's relationship with MBUSA.  (*Id.* at pp. 912, 924.)

The *Bauman I* court described MBUSA as follows:  MBUSA is a Delaware limited liability company and indirect Daimler subsidiary.  (It is a wholly owned subsidiary of a holding company which, in turn, is a wholly owned subsidiary of Daimler.)  MBUSA acts as the sole distributor for all Mercedes-Benz vehicles in the United States, purchasing those vehicles from Daimler in Germany for sale in this country.  (*Bauman I, supra,* 644 F.3d at pp. 913-914.)   Although its principal place of business is in New Jersey, MBUSA has multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irving.  In fact, MBUSA is the largest supplier of luxury vehicles to the California market, with its California sales accounting for 2.4 percent of Daimler's worldwide sales.  (*Ibid.*)  Based on these facts, the parties in *Bauman I* did not dispute that MBUSA, itself, is subject to general jurisdiction in California.  (*Id.* at p. 914.)

MBUSA's distribution of Mercedes-Benz vehicles in the United States is governed by a General Distributor Agreement (GDA).  After analyzing the provisions of the GDA "at some length," the Ninth Circuit concluded that, under the terms of the GDA, Daimler has "the right to control nearly every aspect of MBUSA's operations."  (*Bauman I, supra,* 644 F.3d at pp. 914-917, 920-924.)  Additionally, the *Bauman I* court opined that the sale of Daimler's cars in California was "sufficiently important" to Daimler that—if  MBUSA went out of business—Daimler would continue selling its cars in California, either by itself or through another representative.  (*Id.* at pp. 920-922.)  Under these circumstances, the *Bauman I* court determined that MBUSA was Daimler's agent for personal jurisdiction purposes, that MBUSA's extensive contacts with California could therefore be imputed to Daimler, and that, as a consequence, Daimler was properly subject to general jurisdiction in California.  (*Id.* at pp. 912, 920, 924.)  The Ninth Circuit

4

went on to conclude that the assertion of such jurisdiction over Daimler was reasonable under the particular facts of the case. (*Id.* at pp. 924-931.) In the present action, appellants argued that the trial court should "follow the example" set by *Bauman I* and deny Daimler's motion to quash.

The trial court, however, disagreed with appellants. After allowing for jurisdictional discovery, it granted Daimler's motion to quash on June18, 2012. Noting that a plaintiff has the initial burden of demonstrating facts sufficient to justify the exercise of jurisdiction over a foreign corporation (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062; *Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 111), the trial court first stated that appellants had failed to present adequate evidence to support the existence of specific jurisdiction in this action. In particular, appellants had failed to show that Daimler "was directly involved in the design, manufacture, distribution or sale of the subject 2004 Jeep Cherokee." The trial court next determined that no showing of general jurisdiction had been made. Specifically, citing *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 541, the trial court opined that appellants had not shown that Daimler exercised control over the day-to-day operations of either DCC or MBUSA that was " 'so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent.' " Finally, the trial court declined to follow the Ninth Circuit's *Bauman I* decision, noting that it was not binding precedent and finding that it was factually distinguishable.

Notice of entry of the trial court's order was served on appellants by Daimler on June 21, 2012, and this timely appeal followed. Thereafter, on April 22, 2013, the United States Supreme Court granted Daimler's petition for a writ of certiorari in *Bauman I.* (*Bauman I, supra,* 644 F.3d 909, cert. granted *sub nom. DaimlerChrysler AG v. Bauman* (2013) ___ U.S. ___ [133 S.Ct. 1995].) On November 19, 2013, we stayed proceedings in this case pending the high court's resolution in the *Bauman* matter.

5

## II. THE SUPREME COURT'S *BAUMAN* DECISION

On January 14, 2014, the United States Supreme Court issued its decision in *Bauman II, supra,* 134 S.Ct. 746, unanimously reversing the Ninth Circuit's decision in *Bauman I*.[3]  The Court began by noting that "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U. S. Constitution." (*Bauman II, supra,* 134 S.Ct. at p. 753; see also Code Civ. Proc., § 410.10.)  It therefore framed the issue as whether the assertion of personal jurisdiction over Daimler under the facts of the case "comports with the limits imposed by federal due process." (*Bauman II, supra,* 134 S.Ct. at p. 753.)

After tracing the early history of personal jurisdiction, Justice Ginsberg confirmed that the " 'canonical opinion' " in the area remains *International Shoe Co. v. Washington* (1945) 326 U.S. 310 (*International Shoe*), which held that the exercise of personal jurisdiction over an out-of-state defendant is permissible " 'if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " ' " (*Goodyear, supra,* 131 S.Ct. at p. 2853, quoting *International Shoe*; *Bauman II, supra,* 134 S.Ct. at p. 754.)  After *International Shoe*, the two distinct categories of personal jurisdiction that we recognize today—general and specific—developed, but while specific jurisdiction became " 'the centerpiece of modern jurisdiction theory,' " general jurisdiction played " 'a reduced role' " and has been confined to "limits traditionally recognized." (*Bauman II, supra,* 134 S.Ct. at pp. 754-755, 757-758, fn. omitted.)  Indeed, prior to its decision in *Bauman II*, the high court had considered the application of general jurisdiction on only three occasions in the post-*International Shoe* era.  (*Bauman II, supra,* 134 S.Ct. at pp. 755-758; *Goodyear, supra,* 131 S.Ct. at p. 2854.)

First, in *Perkins v. Benguet Consol. Mining Co.* (1952) 342 U.S. 437 (*Perkins*), a Philippine company ceased its mining operations during the Japanese occupation of the

---

[3] Justice Ginsberg delivered the opinion of the Court, in which seven other justices joined.  Justice Sotomayor filed a separate opinion concurring in the judgment. (*Bauman II, supra,* 134 S.Ct. at p. 750.)

6

Philippines in World War II. The company's president moved to Ohio, where he kept the company's files and conducted its corporate activities. (*Id.* at pp. 447-448.) General jurisdiction over the company in Ohio was appropriate in this " 'textbook case' " because the state was " 'the corporation's principal, if temporary, place of business.' " (*Bauman II, supra,* 134 S.Ct. at pp. 755-756.) In *Helicopteros Nacionales*, in contrast, general jurisdiction over a Columbian helicopter company in Texas state court was found to be improper. That case involved a helicopter crash in Peru that killed four U.S. citizens. The foreign helicopter operator's contacts with Texas were limited to attending a contract-negotiation session in Houston; purchasing helicopters, equipment, and training services from a Texas-based company for substantial sums; accepting checks drawn on a Houston bank; and sending personnel to Texas for training. (*Helicopteros Nacionales, supra,* 466 U.S. at p. 416.) The Court concluded that "the company's Texas connections did not resemble the 'continuous and systematic general business contacts . . . found to exist in *Perkins*.' " (*Bauman II, supra,* 134 S.Ct. at p. 757.)

Finally, in *Goodyear*, the high court determined that general jurisdiction over foreign subsidiaries of a United States parent corporation was not available under the facts of the case. *Goodyear* involved a bus accident outside of Paris that killed two boys from North Carolina and allegations that a defective tire manufactured by the Turkish subsidiary of The Goodyear Tire and Rubber Company (Goodyear USA) was responsible for the fatal crash. (*Goodyear, supra,* 131 S.Ct. at p. 2850.) Although Goodyear USA had plants in North Carolina and did not contest jurisdiction, its foreign subsidiaries had no affiliation with the state. However, a small percentage of tires manufactured by the foreign subsidiaries were distributed in North Carolina by other Goodyear USA affiliates. (*Id*. at pp. 2850, 2852.) Writing for a unanimous Court, Justice Ginsberg rejected the notion that placement of a product into the stream of commerce was sufficient to support a finding of general jurisdiction. (*Id*. at pp. 2854-2855.) Rather, relying on *International Shoe*, Justice Ginsberg opined that general jurisdiction may only be asserted "over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render

7

them essentially at home in the forum State." (*Id.* at p. 2851.) Since the foreign subsidiaries in *Goodyear* were "in no sense at home in North Carolina," general jurisdiction over them was improper. (*Id.* at p. 2857.)

Based on these precedents, the *Bauman II* Court affirmed that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." (*Bauman II, supra,* 134 S.Ct. at p. 760.) A corporation's place of incorporation and principal place of business, for instance, are "paradigm all-purpose forums." (*Ibid.*) Citing *Perkins*, the Court went on to acknowledge that "in an exceptional case" a corporation's operations outside of these paradigm forums "may be so substantial and of such a nature as to render the corporation at home in that State." (*Id.* at p. 671, fn. 19.) However, it rejected as "unacceptably grasping" the plaintiff's suggestion that general jurisdiction be deemed appropriate in every state in which a corporation " 'engages in a substantial, continuous, and systematic course of business.' " (*Id.* at pp. 760-761.) Rather, the *Bauman II* Court emphasized the language of *International Shoe*—speaking in terms of " 'substantial' " and " 'continuous corporate operations within a state' "—and held that, for general jurisdiction purposes, a foreign corporation's forum contacts must be "comparable to a domestic enterprise in that State." (*Bauman, supra,* 134 S.Ct. at p. 758, fn. 11, 761.) Finally, the Court concluded that undertaking an analysis of general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." (*Id.* at p. 762, fn. 20.)

The Court also noted that it had "not yet addressed whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary." (*Bauman II, supra,* 134 S.Ct. at p. 759.) In this regard, it was critical of the agency test applied by the Ninth Circuit in *Bauman I*, stating—"The Ninth Circuit's agency finding rested primarily on its observation that MBUSA's services were 'important' to Daimler, as gauged by Daimler's hypothetical readiness to perform those services itself if MBUSA did not exist. Formulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: 'Anything a

8

corporation does through an independent contractor, subsidiary, or distributor is presumably something that the corporation would do "by other means" if the independent contractor, subsidiary, or distributor did not exist.' " (*Ibid*.) The Court also faulted the Ninth Circuit's analysis of Daimler's right to control MBUSA based on a GBA that expressly established MBUSA as an independent contractor. (*Id*. at pp. 752, 760, fn. 15.) In the end, however, the *Bauman II* Court did not need to reach the agency issue because it held that—even assuming that MBUSA was at home (i.e., subject to general jurisdiction) in California and assuming further that MBUSA's California contacts are imputable to Daimler—"there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." (*Id.* at p. 760.) As a consequence, the Court reversed the Ninth Circuit's general jurisdiction finding.[4] (*Id.* at p. 763.)

### III. GENERAL JURISDCITION IN THE WAKE OF *BAUMAN*

In the present appeal, appellants do not argue that Daimler's own contacts with California are sufficient to justify the exercise of general jurisdiction over the German corporation. Nor do they claim that specific jurisdiction over Daimler is appropriate under the facts of this case.[5] Rather, as in *Bauman II,* appellants' sole contention on appeal is that general jurisdiction over Daimler in California is proper based on Daimler's relationship with MBUSA and MBUSA's contacts with California.[6]

---

[4] In her concurring opinion, Justice Sotomayor stated that she would have found the exercise of general jurisdiction over Daimler unreasonable " 'in the unique circumstance of this case.' " (*Bauman II, supra,* 134 S.Ct. at pp. 762-764 (conc. opn. of Sotomayor, J.).)

[5] Indeed, it would be difficult to argue that this suit "aris[es] out of or relates[s] to" Daimler's contacts with California for purposes of specific jurisdiction, given the trial court's finding that Daimler was not shown to have been "involved in the design, manufacture, distribution or sale of the subject 2004 Jeep Cherokee." (See *Helicopteros Nacionales, supra,* 466 U.S. at p. 414, fn. 8.)

[6] In their opening brief, appellants argued that the California contacts of DCC should also be imputed to Daimler under theories of agency and that such contacts further support a finding of general jurisdiction over Daimler. Appellants appear to have abandoned this claim in their reply brief, stating: "The only issue before the Court is whether the

9

As stated above, "California courts may exercise jurisdiction on any basis that is not inconsistent with the state and federal Constitutions." (*Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 107; see also Code Civ. Proc., § 410.10.) Thus, the inquiry in California is whether the assertion of personal jurisdiction "comports with the limits imposed by federal due process." (*Bauman II, supra,* 134 S.Ct. at p. 753; *Automobile Antitrust Cases, supra,* 135 Cal.App.4th at pp. 107-108.) "On review, we apply our independent judgment to the ultimate question of jurisdiction, but to the extent that the question of jurisdiction turns on factual issues, we are bound by the trial court's findings of fact if they are supported by substantial evidence." (*Automobile Antitrust Cases, supra,* 135 Cal.App.4th at pp. 113-114; see also *CenterPoint Energy, supra,* 157 Cal.App.4th at p. 1117 [in personal jurisdiction matters " ' "we review independently the trial court's conclusions as to the legal significance of the facts" ' "].)

---

relationship between Daimler and its distributor subsidiary MBUSA, Inc. gives rise to general jurisdiction . . . ." However, even if the argument was still properly before us, we would find it unavailing. Unlike specific jurisdiction, general jurisdiction is determined no earlier than at the time a suit is filed. (See *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1101 [exercise of general jurisdiction comports with due process when defendant "has substantial, continuous, and systematic contacts with the forum at the time the complaint is served on that defendant"]; *Serafini v. Superior Court* (1998) 68 Cal.App.4th 70, 78-80 [where defendant's contacts with California arose solely out of his corporation's contacts with the state and he had ceased working for the corporation prior to being served, defendant "absented himself and terminated any general jurisdiction of California over him"]; see also *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1123-1124 [where subsequent to a corporate reorganization defendant succeeded only to the assets and liabilities of its predecessor's regulated businesses, evidence of forum contacts by agent related to the predecessor's unregulated businesses insufficient to support general jurisdiction over defendant] (*CenterPoint Energy*); *Bauman I, supra,* 644 F.3d at p. 914, fn. 7, citing *Wells Fargo & Co. v. Wells Fargo Exp. Co.* (9th Cir. 1977) 556 F.2d 406, 422 [to support a finding of general jurisdiction, agency must be shown at the time suit was filed].) This makes sense as a finding of general jurisdiction is essentially a finding that a foreign defendant's contacts with a forum are " 'so wide-ranging that they take the place of physical presence' " for purposes of service of process. (*Serafini, supra,* 68 Cal.App.4th at p. 78.) Since DCC ceased to be affiliated with Daimler long before the complaint in this action was filed or served, DCC's contacts with California are irrelevant to our general jurisdiction inquiry.

10

After the Supreme Court issued its decision in *Bauman II*, we requested supplemental briefing from the parties regarding the impact of that decision on the continued viability of these proceedings. Unsurprisingly, Daimler argues that *Bauman II* is indistinguishable from the present case and requires this court to affirm the trial court's order quashing service. Specifically, Daimler points to multiple statements in the *Bauman II* opinion which indicate that—as a matter of due process under the United States Constitution—California courts do not have general personal jurisdiction over *Daimler*. (See, e.g., *Bauman II, supra,* 134 S.Ct. at p. 751, 763 ["subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands"]; *id.* at p. 760, fn. 16 ["California is not an all-purpose forum for claims against Daimler"]; *id.* at p. 761, fn. 17 [although "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature  as to render the corporation at home in that State[,] . . . Daimler's activities in California plainly do not approach that level"].) Appellants, in contrast, attempt to distinguish *Bauman II*  in several ways, none of which we find persuasive.

First, appellants argue that *Bauman II* should be confined to its particular facts— that is, to cases involving foreign parties "based on events occurring entirely outside of the United States." (*Bauman II, supra,* 134 S.Ct. at p. 750; see also *id*. at p. 751 [noting the question presented in *Bauman II* is "whether the *Due Process Clause of the Fourteenth Amendment* precludes the District Court from exercising jurisdiction over Daimler in this case, given the absence of any California connection to the atrocities, perpetrators, or victims described in the complaint"].) Here, in contrast, the plaintiffs are from California, the accident occurred in California, the product was purchased in California, and a United States subsidiary of Daimler manufactured the product. Under such circumstances, appellants contend, it would not offend notions of due process to find Daimler "at home" in California for general jurisdictional purposes.

In our view, appellant's argument impermissibly "elide[s] the essential difference between case-specific and all-purpose (general) jurisdiction." (*Goodyear, supra,* 131

S.Ct. at p. 2855.) It is true that Justice Ginsburg does emphasize the entirely foreign nature of both the parties and the events underlying the *Bauman II* litigation. (*Bauman II, supra,* 134 S.Ct. at p. 750; see also *id.* at p. 751.) She highlights these facts, however, not to create exceptions to the broadly applicable test ultimately adopted by the Court, but rather to point out the inadequacies of the expansive jurisdictional approach advocated by the plaintiffs. (See *id.* at pp. 760-761 [plaintiff's suggested test "unacceptably grasping"]; *id.* at p. 754, fn. 5 [plaintiff's would find Daimler amenable to suit in California for a Polish car accident that injured Polish plaintiffs].) Indeed, the test endorsed in *Bauman II*—whether a foreign defendant is " 'essentially at home in the forum state' "—focuses on the *defendant's* significant corporate presence in the forum. (*Id.* at pp. 751, 758 & fn. 11, 760-761 & fn. 19, 762 & fn. 20.) Thus, under *Bauman* II, the domicile of the plaintiffs and the location of the incident sued upon are essentially non-factors in the general jurisdiction calculus. (See also *Goodyear, supra,* 131 S.Ct. at p. 2857, fn. 5 [" '[g]eneral jurisdiction to adjudicate has in [United States] practice never been based on the plaintiff's relationship to the forum' "].)

Appellant's second contention—that *Bauman II* did not consider California's representative services doctrine which would permit the assertion of general jurisdiction over Daimler in this case—is equally unpersuasive. As we have recognized, the representative services doctrine is "a species of agency." (*F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 798.) As such, the result of its application is that "the contacts of a local agent through which a foreign principal acts may be imputed to that foreign defendant," thereby conferring general jurisdiction over the foreign defendant under "agency principles." (*Automobile Antitrust Cases, supra,* 135 Cal.App.4th at pp. 119-120.) While the *Bauman II* Court questioned the formulation and application of the Ninth Circuit's agency test, in the end it *assumed agency* and still concluded that MBUSA's California contacts were insufficient to confer general jurisdiction over Daimler in California. (*Bauman II, supra,* 134 S.Ct. at pp. 758-760 ["we need not pass judgment on invocation of an agency theory in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained"].) Thus, the

specifics of the agency test applied are irrelevant to the *Bauman II* holding, as the result would be the same under *any* theory of agency.[7]

In sum, appellants cannot escape the fact that the *Bauman II* decision controls with the instant action and mandates the conclusion that, barring the development of new facts, "California is not an all-purpose forum for claims against Daimler." (*Bauman II, supra,* 134 S.Ct. at p. 760, fn. 16.) We therefore decline to disturb the trial court's order granting Daimler's motion to quash service of summons for lack of personal jurisdiction.[8]

## IV. DISPOSITION

The judgment is affirmed. Each party to bear their own costs.

---

[7] Appellants' final argument—that "any remaining factual issues relative to jurisdiction should be construed against Daimler" due to Daimler's failure to cooperate in the jurisdictional discovery process—does not help them. We agree with the trial court that appellants have waived any issues regarding inadequate discovery by failing to raise them in a timely fashion in the court below, either through appropriate motions to compel or otherwise. (See Code Civ. Proc., § 2025.480, subd. (b) [60-day deadline for motion to compel with respect to inadequate deposition testimony]; see also *id.,* §§ 2030.300, subd. (c) [45 day waiver of right to compel further response for written interrogatories], 2031.310, subd. (c) [same for document inspection], 2033.290, subd. (c) [same for requests for admission].) Regardless, given the holding in *Bauman II* and the outcome of this case, additional discovery into the "intricate and detail-rich relationships between [Daimler] and its subsidiaries" would hardly have been likely to lead to the production of facts establishing general jurisdiction over Daimler in California. (*Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 127.)

[8] We do not, by our decision in this matter, mean to discount in any way the very real suffering Young has endured and will continue to endure as a result of the August 2008 accident. We cannot, however, in our sympathy for Young, ignore the very clear boundaries for the exercise of general jurisdiction established by the Supreme Court in *Bauman II*, boundaries which were, themselves, erected to protect fundamental due process rights.

_____
REARDON, ACTING P. J.

We concur:


_____
RIVERA, J.


_____
HUMES, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KIMBERLY PATRICE YOUNG et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>DAIMLER AG,<br><br>    Defendant and Respondent. | A135999<br><br>(County of Alameda<br>No. RG-10-509414) |

BY THE COURT:

The written opinion which was filed on July 7, 2014, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date: _____     _____ P.J.

<u>Kimberly Young et al. v. Daimler AG (A135999)</u>

Trial court:           Alameda County

Trial judge:          Hon. John M. True, III

Attorneys:

The Brandi Law Firm, Casey Kaufman and Daniel Dell'Osso for Plaintiff and Appellant

Carroll, Burdick & McDonough, Justs N. Karlsons, Matthew J. Kemner, David M. Rice, and Nathaniel K. Fisher for Defendant and Respondent