Filed 3/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BNSF RAILWAY COMPANY, | B260798 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC552015) |
| v. | |
| SUPERIOR COURT FOR THE COUNTY OF LOS ANGELES, | |
| Respondent; | |
| VICKI L. KRALOVETZ, Individually and as Executor, etc., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Emilie H. Elias, Judge. Petition granted.

Sims Law Firm, Selim Mounedji and Brock Christensen for Petitioner.

No appearance for Respondent.

The Lanier Law Firm, Mark Douglas Bratt, Alexandra Shef, and Stephanie M. Taylor; The Arkin Law Firm, Sharon J. Arkin, for Real Parties in Interest.

Petitioner BNSF Railway Company seeks a writ of mandate directing respondent trial court to vacate its order denying petitioner's motion to quash service of process for lack of general personal jurisdiction. Real parties in interest Vicki L. Kralovetz, individually and in her capacity as personal representative of the Estate of Peter J. Kralovetz, Aaron Kralovetz, and Sarah Kralovetz (collectively "real parties") oppose issuance of the writ and request that we take judicial notice of several documents that in their view support their position. We deny the request for judicial notice, conclude that general jurisdiction is lacking here, and grant the petition for writ of mandate.

**FACTUAL AND PROCEDURAL BACKGROUND**

Real parties filed a wrongful death action against petitioner's predecessor in interest and numerous other defendants in Los Angeles County Superior Court. (*Kralovetz v. Aerojet Rocketdyne, Inc.* (Super. Ct. L.A. County, July 17, 2014, No. BC552015).) Real parties allege that decedent Peter J. Kralovetz developed and died from malignant pleural mesothelioma as a result of exposure to defendants' "asbestos, asbestos-containing products and/or products designed to be used in association with asbestos products." The exposure attributed to petitioner allegedly occurred in Wichita, Kansas, where decedent once worked at a dismantling facility and roundhouse owned by petitioner's predecessor.

Petitioner moved to quash service of the summons for lack of personal jurisdiction. (See Code Civ. Proc., § 418.10, subd. (a)(1).) Petitioner argued the trial court lacked specific personal jurisdiction over it because conduct alleged against it did not arise from petitioner's in-state activities. Petitioner also argued the trial court lacked general personal jurisdiction because it is a Delaware corporation with its principal place of business in Texas and accordingly is not "essentially at home" in California (citing *Daimler AG v. Bauman* (2014) 134 S. Ct. 746, 751 (*Daimler*) and *Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 131 S. Ct. 2846, 2854 (*Goodyear*) among other authority.)

2

In support of its motion, petitioner provided a declaration from James T. Obermiller, its custodian of records and director of corporate support and compliance. According to this declaration, petitioner is a railroad that provides freight transportation over 23,319 miles of railroad track spanning 28 states and two Canadian provinces. Petitioner is incorporated in Delaware and has its principal place of business in Fort Worth, Texas. Petitioner's principal officers and managerial departments are housed in Texas, as is its central operations center for train dispatching and network operations monitoring. Petitioner's highest concentrations of employees (approximately 20 percent) and railroad track (approximately 12 percent) also are in Texas. Petitioner generates the most revenue from its operations in Texas. California houses approximately 8.1 percent of petitioner's total workforce (3,520 employees), accounts for approximately 6 percent of its revenue, and contains less than 5 percent of its total track mileage (1,149 miles).

In response, real parties asserted that petitioner had minimum contacts that were sufficiently "substantial . . . continuous and systematic" to warrant the exercise of general jurisdiction by the trial court. They also requested a continuance to enable further jurisdictional discovery, which, they argued, would "elicit information regarding [petitioner's] contacts with California that will support an exercise of general jurisdiction by the Court."

Petitioner conceded in reply that "it has substantial, systematic, and continuous contacts with California," but argued these contacts are "immaterial" in the context of general jurisdiction. According to petitioner, *Daimler* "categorically rejected" the minimum contacts test and "made it clear that an exercise of general jurisdiction is only proper in the Corporation's place of incorporation or its principal place of business." Petitioner also opposed real parties' request for jurisdictional discovery.

After hearing oral arguments the trial court permitted real parties to take a two-hour jurisdictional deposition of Obermiller. In their supplemental opposition filing following that deposition, real parties again argued that petitioner has sufficient minimum contacts with California to support the exercise of general jurisdiction. In arguing that

3

the exercise of general jurisdiction over petitioner would not offend traditional notions of fair play and substantial justice, real parties emphasized petitioner's concededly substantial, continuous, and systematic relationship with California, as well as the $1.4 billion in revenue petitioner generates annually in the state. (See *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 414 (*Helicopteros*).) Real parties also attempted to distinguish *Daimler* on its facts. In reply, petitioner redoubled its reliance upon *Daimler* and *Goodyear*.

After hearing additional argument on the matter, the trial court denied petitioner's motion to quash. The court quoted *Daimler* (which in turn quoted *Goodyear*) for the proposition that "'[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" (*Daimler*, *supra*, 134 S. Ct. at p. 754.) The court continued, "[t]his means a foreign corporation can be subjected to general jurisdiction in California as to claims arising outside California if its 'commercial activities impact California on a "substantial, continuous and systematic" basis (often referred to as "doing business in the state") . . . .' [Citations.]" Applying these principles, the court concluded that petitioner's "systematic and continuous business in California," its status as an American company, and its role as a "perpetrator" of the wrongdoing alleged by real parties rendered it amenable to general jurisdiction even after *Daimler* and *Goodyear*.

Petitioner timely filed the instant petition for writ of mandate. We issued an order directing the trial court to show cause why a peremptory writ of mandate to vacate the order should not issue. Real parties filed a return, and petitioner filed a reply.

## DISCUSSION

### I. Judicial Notice

Real parties request that this court take judicial notice of various records of the California Secretary of State, the Los Angeles County Superior Court, the Orange County

4

Superior Court, and the California Employment Development Department. They assert that the proffered documents, none of which was presented to the court below, support their contentions that petitioner "operates in California as though it were a domestic corporation and, indeed, if it were a California corporation, it would be one of the top business employers in the state." They argue, not in their request for judicial notice but in a footnote in their return to the writ petition, that four "compelling reasons justify consideration of the additional evidence": (1) the fact that *Daimler* is a recent decision and concomitant uncertainty as to the "contours and confines of its holding . . . in other factual circumstances," (2) the proffered evidence is not reasonably subject to dispute, (3) the petitioner's "resistance" to their efforts to obtain more robust jurisdictional discovery, and (4) "additional evidence further demonstrates that the trial court's conclusion was correct." Citing *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 604-605 (*Bombardier*) and *In re Zeth S.* (2003) 31 Cal.4th 396, 405, petitioner responds the request should be denied because there are no compelling reasons warranting factual findings by this court. We agree with petitioner.

Real parties bear the initial burden of demonstrating by a preponderance of the evidence a factual basis justifying the exercise of jurisdiction. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*); *BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 428.) In the trial court, they endeavored to carry this burden by relying solely upon petitioner's admissions and two additional facts obtained from their jurisdictional deposition of Obermiller. Real parties now seek to buttress their evidentiary showing below with a host of public records that were available to them but not provided to the trial court. However, even the case they cite in support of their motion, *Parsons v. Superior Court* (2007) 149 Cal.App.4th Supp.1, 8, recognizes that in most cases, "the appellate court will refuse to consider additional facts that were not presented first to the trial court." Indeed, our Supreme Court has noted that "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate

5

court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons*, *supra*, 14 Cal.4th at p. 444, fn.3.) Appellate courts may deviate from that general practice only in exceptional circumstances. (*Ibid.*; see also *Bombardier*, *supra*, 216 Cal.App.4th at p. 605.)

Considered alone or together, none of the reasons real parties advance in support of their motion constitutes an exceptional circumstance. Real parties knew from petitioner's initial filing that petitioner intended to rely on *Daimler* and could have undertaken more timely efforts to argue the "contours" of its holding. The publicly accessible evidence they now seek to offer was available to them to file below despite any "resistance" mounted by petitioner during the Obermiller deposition. And whether the proffered evidence supports the trial court's conclusion is something that the trial court should have considered in the first instance, as are the merits of any dispute petitioner may have with the evidence. The request for judicial notice is denied.[1]

## II.     General Jurisdiction

### A.     Burden of Proof and Standard of Review

When a specially appearing nonresident defendant challenges personal jurisdiction by a motion to quash, the plaintiff has the burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction. (*Vons*, *supra*, 14 Cal.4th at p. 449; *BBA Aviation PLC*, *supra*, 190 Cal.App.4th at p. 428.) The plaintiff must come forward with affidavits and other competent evidence to carry this burden and cannot simply rely on allegations in an unverified complaint. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110.) If the plaintiff meets this burden, "it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.]" (*Vons*, *supra*, 14 Cal.4th at p. 449, accord, *Burdick v. Superior*

---

[1]     Even if the court were to consider the additional records provided by real parties, it would not change the outcome or affect the court's decision to grant the petition. As explained, *post*, the focus of our inquiry is not on the absolute quantity of business petitioner transacts in California. Instead, we consider petitioner's California's contacts in the broader context of its overall operations.

*Court* (2015) 233 Cal.App.4th 8, 17 (*Burdick*).) If the trial court denies a motion to quash service of summons due to lack of personal jurisdiction, the defendant "may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons." (Code Civ. Proc., § 418.10, subd. (c).)

Where, as here, the evidence of jurisdictional facts is not in dispute, the question of jurisdiction is a legal one subject to de novo review. (*Vons*, *supra*, 14 Cal.4th at p. 449; *Burdick*, *supra*, 233 Cal.App.4th at p. 17.) "'The ultimate question whether jurisdiction is fair and reasonable under all of the circumstances, based on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review.' [Citation.]" (*Burdick*, *supra*, 233 Cal.App.4th at p. 17.)

### B. Evolution of General Jurisdiction Principles

California's long-arm statute allows its courts to exercise personal jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) This statute "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." (*Daimler*, *supra*, 134 S. Ct. at p. 753.) We accordingly restrict our inquiry to whether the trial court's order comports with the limits imposed by federal due process. (*Ibid.*)

"The canonical opinion in this area remains *International Shoe Co. v. Washington* (1945) 326 U.S. 310 (*International Shoe*), in which [the United States Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' [Citation.]" (*Goodyear*, *supra*, 131 S. Ct. at p. 2853; accord *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268.) "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central

7

concern of the inquiry into personal jurisdiction.' [Citation.]" (*Daimler*, *supra*, 134 S. Ct. at p. 754.)

"*International Shoe*'s conception of 'fair play and substantial justice' presaged the development of two categories of personal jurisdiction" (*ibid.*): specific and general. Specific jurisdiction becomes relevant when "the in-state activities of the corporate defendant 'ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on.' [Citation.]" (*Ibid.*) General jurisdiction, on the other hand, comes into play where "'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.' [Citation.]" (*Ibid.*) "Since *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role.' [Citation.]" (*Id.* at p. 755.) Indeed, "general jurisdiction has come to occupy a less dominant place in the contemporary scheme," as the U.S. Supreme Court has "declined to stretch general jurisdiction beyond limits traditionally recognized." (*Id.* at pp. 757-758.) The parties agree that general jurisdiction is the pertinent consideration in this proceeding.

The U.S. Supreme Court has taken up the issue of general jurisdiction only four times in the 70 years following *International Shoe*. (See *Daimler*, *supra*, 134 S. Ct. at pp. 756-757; *Young v. Daimler AG* (2014) 228 Cal.App.4th 855, 861 (*Young*).) The court's "1952 decision in *Perkins v. Benguet Consol. Mining Co*. [(1952) 342 U.S. 437 (*Perkins*)] remains '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.' [Citation.]" (*Goodyear*, *supra*, 131 S. Ct. at p. 2856.) In *Perkins*, the defendant was a mining company incorporated under the laws of the Philippines. (*Perkins*, *supra*, 342 U.S. at p. 439.) The defendant ceased its mining operations during Japan's World War II occupation of the Philippines. (*Id.* at p. 447.) The company president moved from the Philippines to Ohio, where he kept an office, maintained the company's files, and conducted the company's corporate activities. (*Id*. at pp. 447-448.) The Supreme Court

8

concluded that the company was subject to general jurisdiction in Ohio (*id.* at p. 448), because "'Ohio was the corporation's principal, if temporary, place of business.' [Citation.]" (*Daimler*, *supra*, 134 S. Ct. at p. 756.)  The next time it considered the issue, 30 years later, the Supreme Court concluded that a court in Texas could not exercise general jurisdiction over a Colombian helicopter company whose contacts with the state were limited to "sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas-based helicopter company] for substantial sums; and sending personnel to . . . facilities in Fort Worth for training." (*Helicopteros*, *supra*, 466 U.S. at p. 416.)  The Supreme Court held that these minimal connections to Texas "did not resemble the 'continuous and systematic general business contacts . . . found to exist in *Perkins*.' [*Ibid.*]" (*Daimler*, *supra*, 134 S. Ct. at p. 757.)

More recently, in *Goodyear*, the high court unanimously ruled that a court in North Carolina lacked general jurisdiction over wrongful death claims asserted against a foreign subsidiary of a United States company (Goodyear) that manufactured tires implicated as the cause of a bus accident in France.  (See *Goodyear*, *supra*, 131 S. Ct. at p. 2850-2851.)  Although the parent company had facilities in North Carolina – and did not contest jurisdiction – the foreign subsidiary had no affiliation with the state aside from shipping a limited number of custom-ordered tires there.  (*Id.* at p. 2852.)  The high court concluded that these attenuated, stream-of-commerce contacts, though possibly relevant to specific jurisdiction, did "not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." (*Id.* at p. 2855 [emphasis in original].)  The court explained that mere "'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" (*Id.* at p. 2856.)  Rather, it continued, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and

9

systematic' as to render them essentially at home in the forum State." (*Id.* at p. 2851.) Since the foreign subsidiaries were "in no sense at home in North Carolina," the courts of that state could not exercise general jurisdiction over them. (*Id.* at p. 2857.) The high court did not precisely define the locations in which a corporation may be considered "at home." Instead, it drew an analogy to domicile, which is the "paradigm forum for the exercise of general jurisdiction" over an individual. (*Id.* at pp. 2853-2854.) In an accompanying citation, however, the court noted that the place of incorporation and principal place of business have been identified as "'paradig[m]' bases for the exercise of general jurisdiction" over corporations. (*Id.* at p. 2854.)

Last year in *Daimler,* the high court synthesized, clarified, and reaffirmed the teachings of *Perkins*, *Helicopteros*, and *Goodyear*. There, a group of Argentinian plaintiffs injured in Argentina filed suit in California against DaimlerChrysler Aktiengesellschaft (Daimler), a German company that manufactures Mercedes-Benz vehicles in Germany. (*Daimler*, *supra*, at p. 751.) The plaintiffs argued that the California court could exercise general jurisdiction over Daimler because an indirect Daimler subsidiary, Mercedes-Benz USA, LLC (MBUSA), had several facilities in and served as the largest supplier of luxury vehicles to California, a market that generated 2.4 percent of Daimler's worldwide sales. (*Id.* at p. 752.) The high court rejected this contention. The court concluded that, even if it were to assume that MBUSA, which was incorporated in Delaware and had its principal place of business in New Jersey (*id.* at p. 751), was "at home" in California, "and further to assume that MBUSA's contacts are imputable to Daimler, there still would be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." (*Id.* at p. 760.) In other words, when properly considered in the larger context of Daimler's corporate activities "in their entirety, nationwide and worldwide," MBUSA's contacts with California were insufficient to give that state authority "over a 'far larger quantum of . . . activity' having no connection to any in-state activity." (*Id.* at p. 762, fn. 20.)

10

In explaining its conclusion, the high court provided crucial guidance on *Goodyear* and the importance of ascertaining a corporation's "home." It explained that "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. . . . With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]. . . bases for general jurisdiction.'" (*Id.* at p. 760.) The high court clarified that "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business" (*ibid.* [emphasis in original]), but nonetheless suggested that only in an "exceptional case" should one expect "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [to] be so substantial and of such a nature as to render the corporation at home in that State." (*Id.* at p. 762, fn. 19.) The court accordingly rejected as "unacceptably grasping" plaintiffs' attempt to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" (*Id.* at 761.)

The court further explained that "the words 'continuous and systematic' were used in *International Shoe* to describe instances in which the exercise of *specific* jurisdiction would be appropriate. [Citation.] Turning to all-purpose jurisdiction, in contrast, *International Shoe* speaks of 'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities.*' [Citations.]" (*Id.* at 761 [emphases in original].) Thus, "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.' [Citation.]" (*Id.* at 761.) In footnotes, the court suggested that test would be satisfied where the corporation is "comparable to a domestic enterprise in that State" (*id.* at p. 758, fn. 11), but cautioned that there is no particular quantum of local activity that marks the

11

applicable threshold. (*Id.* at p. 762, fn. 20.) It further reiterated that "[g]eneral jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them," lest "at home" become "synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (*Id.* at p. 762, fn. 20.)

### C.     Application of Those Principles to This Case

The dispute here concerns the application of the principles enunciated in *Goodyear* and *Daimler* to the facts of this case. The trial court concluded that "[t]he situation here is different" from those cases because petitioner "is not a foreign-country corporation, and [real parties] are not seeking to impose general jurisdiction over [petitioner] through contacts by an American subsidiary." Instead, the court noted, petitioner "itself is the alleged perpetrator and physically conducts continuous and systematic business in California" by owning 1,149 miles of track, employing 3,520 people, and generating 6 percent of its overall revenue here. We are not persuaded that these facts render petitioner "essentially at home" in California and accordingly conclude on the basis of *Goodyear*, *Daimler*, and the prior cases underlying them that general jurisdiction is lacking here.

At the outset, we reject real parties' contention that *Goodyear* and *Daimler* are not applicable because "[t]he facts in this case have no corollary whatsoever to the facts" in those cases. Factual differences between the case at bar and the four general jurisdiction cases considered by the high court do not render the broad principles enunciated in those cases inapplicable to the situation here. Indeed, Division Four of the First District Court of Appeal recently considered and rejected that very same argument. (See *Young*, *supra*, 228 Cal.App.4th at p. 866.) As our colleagues there explained, "[i]t is true that Justice Ginsburg does emphasize the entirely foreign nature of both the parties and the events underlying [*Daimler*]. . . . She highlights these facts, however, not to create exceptions to the broadly applicable test ultimately adopted by the court, but rather to point out the

inadequacies of the expansive jurisdictional approach advocated by [plaintiffs]." (*Ibid.*) We agree that the test endorsed in *Daimler* – whether a corporation's "'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State'" – is a broadly applicable one that may readily be and indeed was intended to be used whenever courts must consider and resolve the issue of general jurisdiction. (See *id.* at p. 862) We find particularly telling in this regard the high court's broad holding in *Goodyear*, which concerned a foreign subsidiary of an American company, that "[a] court may assert general jurisdiction over foreign (*sister-state or foreign-country*) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (*Goodyear*, *supra*, 131 S. Ct. at p. 2851 [emphasis added].)

Petitioner concedes that it transacts substantial business in California. The business it transacts here, however, constitutes a relatively small portion of its overall operations. It is unclear from the record before the trial court how many facilities petitioner operates here, but we know that California is home to only 8 percent of its workforce, contains only 5 percent of its track infrastructure, and accounts for only 6 percent of its revenue. "General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." (*Daimler*, *supra*, 134 S. Ct. at p. 762, fn. 20.) That appraisal here compels the conclusion that petitioner's operations in California are not sufficient in comparison to its national operations and are not so "continuous and systematic" as to render it "at home" in California. This is not a case like *Perkins*, in which a corporation conducted its principal business activities in the forum state in such a way as to properly be considered "comparable to a domestic enterprise in that state." (*Daimler*, *supra*, 134 S. Ct. at p. 758, fn.11.) Instead, the business petitioner conducts here is absolutely large but relatively small and, more importantly, is performed at the behest and in the service of petitioner's principal hub in Texas. If petitioner's California activities sufficed to allow adjudication of a Kansas-rooted case in California, "the same global reach would presumably be available in every

13

other State in which [petitioner's] sales are sizable." (*Id.* at p. 761.) This result is not permissible under the due process clause as interpreted in *Daimler*. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to 'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' [Citation.]" (*Id.* at pp. 761-762.)

Real parties suggest this is an "exceptional case" (see *Daimler*, *supra,* 134 S. Ct. at p. 761, fn. 19) in which petitioner should be amenable to suit in California despite having its principal place of business and place of incorporation elsewhere. They assert that asbestos disease is an indivisible injury, and requiring plaintiffs affected by it to "sue individual defendants, each in its own state of incorporation or in its principal place of business, in multiple places throughout the country," would "present a horrific burden to *all* the courts," work a grave injustice to injured plaintiffs, and "unjustifiably assist defendants in avoiding responsibility for their conduct." We are not unsympathetic to real parties' concerns, which echo those Justice Sotomayor raised in her concurring opinion in *Daimler*. (See *Daimler*, *supra*, 134 S. Ct. at pp. 772-773 (conc. opn. of Sotomayor, J.).) However, the due process rights of defendants cannot vary with the types of injury alleged by plaintiffs. Our analysis must focus on "the relationship among the defendant, the forum, and the litigation" (*Daimler*, *supra*, 134 S. Ct. at p. 754), and that relationship here is simply not enough to render petitioner "at home" in California such that the exercise of general jurisdiction over actions unrelated to petitioner's forum activities is warranted. Furthermore, our holding that general jurisdiction does not lie here does not deprive real parties of a forum in which to seek relief against petitioner. The two paradigmatic fora in which a corporation is subject to general jurisdiction, its place of incorporation and its principal place of business, "afford [] recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims" (*id.* at p. 760) while simultaneously preserving the constitutional rights and expectations of petitioner.

14

**DISPOSITION**

The petition for writ of mandate is granted.  Let a writ of mandate issue directing the trial court to vacate its order denying petitioner's motion to quash service of summons and to enter a new order granting the motion.  Petitioner is to recover its costs in this proceeding.

**CERTIFIED FOR PUBLICATION**


COLLINS, J.




We concur:




EPSTEIN, P. J.




WILLHITE, J.

15