Filed 3/21/22; certified for publication 4/12/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

SK TRADING INTERNATIONAL CO. LTD.,

     Petitioner,

v.

THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,

     Respondent;

THE PEOPLE,

     Real Party in Interest.

A163590

(City & County of San Francisco Super. Ct. No. CGC-20-584456)

These writ proceedings arise out of an action brought by the People of the State of California against several oil and gas firms alleging their participation in a multiyear conspiracy to manipulate the California gasoline market to the detriment of California consumers. Defendant SK Trading International Co. LTD (SK Trading), a South Korean corporation, has petitioned for a writ of mandate to compel the trial court to reverse its order denying its motion to quash service of the summons for lack of personal jurisdiction. SK Trading argues that its limited contacts with California are insufficient to support the court's exercise of specific personal jurisdiction. We disagree and shall deny the petition.

1

## Factual and Procedural Background

On May 4, 2020, the Attorney General filed the present action against petitioner SK Trading, SK Energy Americas, Inc. (SK Energy), a California Corporation and subsidiary of SK Trading, and Vitol Inc. (Vitol), a Delaware Corporation. The complaint alleges violations of the Cartwright Act, Business and Professions Code[1] section 16720 et seq., and the Unfair Competition Law, section 17200 et seq. The complaint generally refers to SK Trading and SK Energy collectively as the SK defendants or SK. The pleading alleges that SK Energy "functioned as the California trading arm" of SK Trading, that SK Energy's trading was conducted within the "continuous and pervasive control and supervision" of SK Trading, that SK Trading was "directly involved in nearly every aspect" of the employment of SK Energy's head trader, and that SK Trading "specifically reviewed and approved key decisions to coordinate certain trading activities with Vitol."

The complaint provides the following background information on the gasoline market in California: "California has vehicle emissions standards that are more stringent than the rest of the country. Gasoline produced pursuant to these standards is called California Reformulated Gasoline Blendstock for Oxygenate Blending ('CARBOB'). The CARBOB specifications are unique to California; therefore, gasoline used in neighboring states generally does not meet CARBOB specification and cannot be used as a substitute source of supply."

Gasoline for physical delivery within a short time frame is bought and sold on "spot markets." California has two spot markets, one for delivery in Northern California and the other for delivery in Southern California. Prices

---

[1] All statutory references are to the Business and Professions Code unless otherwise noted.

on the California spot markets are "usually but not always higher" than prices on other gasoline markets. Spot market trades in California "are traded through non-public transactions, sometimes called over-the-counter ('OTC') trades. These OTC transactions do not occur on a centralized open exchange . . . , so prices on the California spot markets are not immediately public. Instead, market participants rely on price-reporting services that report spot market prices from sources that participate in the market, such as traders, refiners, and brokers. [¶] . . . The Oil Price Information Service, LLC ('OPIS') is the most widely used reporting service in California." The Commodity Exchange Act, which governs the spot market trading in California prohibits a transaction that "is, of the character of, or commonly known to the trade as, a 'wash sale' or 'accommodation trade' " (7 U.S.C. § 6c(a)(2)(A)(i)) and prohibits a transaction that "is used to cause any price to be reported, registered, or recorded that is not a true and bona fide price." (7 U.S.C. § 6c(a)(2)(B).) A "wash trade" is defined by defendants as "a prearranged, round-turn transaction executed to avoid taking a bona fide position in the market and/or the risk of price competition."

The complaint alleges that beginning in late 2014 through 2015, defendants entered into agreements with each other "to drive up and manipulate the spot market price for gasoline so that they could realize windfall profits on these large contracts to deliver gasoline and gasoline blending components." The complaint alleges, "The goal of the scheme was simple: to drive up or stabilize the OPIS-reported price during pricing windows and to realize supra-competitive profits while limiting bona fide market risk. [¶] . . . While tactics employed by Vitol and SK during the scheme varied and were often complex, there were two primary components: (1) engage in trades that were reported to OPIS for the purpose of inflating

3

the OPIS-published price in the spot Market Report, and (2) execute facilitating trades to hide or disguise the nature of the scheme, to limit or eliminate bona fide market risk on the reported trades, and to share profits with each other." For example, defendants might complete an initial transaction during the early trading hours at an inflated price so that OPIS would report an inflated purchase price to other market participants, signaling artificially high demand. Then, defendants would conduct a second trade, which was not reported to OPIS, that was "in the opposite direction of the OPIS-reported trade. This type of round-trip or round-turn facilitating trade . . . effectively negated the volume of gasoline purportedly exchanged in the OPIS-reported trade" and "ensured that no gasoline would actually change hands as a result of the OPIS- reported trade that inflated the price reported in the Spot Market Report." While the prices were artificially high, defendants were able to reap "extraordinary and supra-competitive profits."

The complaint alleges "alliances or joint ventures" between Vitol and the SK defendants were "a crucial component" to the success of the scheme. The "alliances or joint ventures" were "not reduced to writing between the companies" and defendants "took steps not to reveal the nature of these agreements to other market participants." "While the so-called 'joint venture' agreements were being reached, SK and Vitol engaged in the trading manipulation described above to benefit their common interest. Therefore, while it may have appeared to market participants that Vitol and SK were competitors, in fact the two companies were working together. Despite the terminology used, the 'joint ventures' were effectively a sham or pretext for cooperation and were a method of engaging in prearranged transactions and avoiding competition."

4

The complaint alleges California consumers paid for defendants' increased profits through inflated prices at the pump.

SK Trading moved to quash service of the summons on the ground that the court lacked personal jurisdiction over it. It argued that the company has never had a presence in California or conducted business within the state, and has never exercised control over SK Energy's day-to-day operations. It asserted that SK Trading "has never executed a trade of physical gasoline in California or entered into a futures contract related to the California gasoline market. It has never entered into a contract to buy or sell physical gasoline or a futures contract related to the California gasoline market. Nor has it ever entered into a joint venture or other collaborative arrangement with another company in California."

Evidence of the following undisputed facts was produced in jurisdictional discovery: In January 2014, SK Trading conducted its "1st Half 2014 Strategic Meeting" at which it set forth a plan to improve SK Energy's profits from trading on the spot market in California. The plan encouraged SK Energy to hire a new trader with California gasoline trading experience and expertise and called for the promotion of "alliances" or "joint ventures" between SK Energy and other gas firms. Thereafter, a business plan was drafted for SK Energy incorporating the strategies previously discussed.

SK Trading subsequently supported and approved the hiring of former Vitol trader David Niemann as SK Energy's new west coast gasoline trader. SK Trading received background information on potential hires, including their trading history and likelihood of being recruited. SK Trading organized the information that SK Energy provided to its personnel committee in support of its decision to hire Niemann. A SK Trading executive interviewed Niemann at SK Energy's headquarters in Houston and provided final

5

approval for his hire. The SK Trading executive then reported to the SK Trading CEO that he supported hiring Niemann "given his focus on teamwork, clear views based on more than 20 years of experience in the [United States West Coast] market, and decent attitudes." Niemann thought of SK Trading as his "management" and accused SK Trading of "micromanaging every little aspect of the finances."

Executives of both SK Trading and SK Energy met regularly with Vitol executives throughout 2014 and 2015. In early 2015, SK Trading's CEO reported on a meeting with Vitol's CEO and Global Distillates Bookleader, among others, at which they "exchanged opinions on the overall issues of the oil industry such as oil prices" and "Vitol agreed to make mutual efforts to develop cooperative projects with SK." In July 2016, a SK Trading executive visited Houston to meet with, among others, Vitol's west coast gasoline trader. Vitol's trader informed him that Vitol "has been achieving good performance record last year and this year through JV [joint venture] with SK . . . in the USWC market" and that their "JV with Niemann is more effective and creates higher net profits than any other Regional Book." The Vitol trader also advised that "[d]ue to [his] lack of experience, he had quite a tough time in his first year of trading (year 2014), but along with the super strong trend of USWC market in 2015, he has continued collaboration with Niemann through Storage, cargo JV, etc."

Throughout the relevant time period, SK Energy submitted a weekly report to SK Trading. The report included position and valuation information as well as information on CARBOB trading and the ongoing coordination with Vitol related to the California market.

The trial court denied the motion to quash. The court concluded that SK Trading's contacts with California supported the court's exercise of

specific personal jurisdiction. The court explained, "Plaintiffs have presented evidence that . . . [SK Trading] controlled and facilitated key aspects of the alleged conspiracy. It sought out and maintained a cooperative relationship with Vitol in California, including meeting with Vitol to discuss California coordination, while holding the SK Defendants out as competitors to Vitol. [SK Trading] also played a primary role in the hiring and supervision of former Vitol trader David Niemann. These connections with California are more than sufficient. [Citation.] On this record, the court concludes that the operative facts of the controversy are related to the defendant's contact with this state."

SK Trading timely commenced these writ proceedings seeking to overturn the trial court's order.

## Discussion

1. *General Principles of Personal Jurisdiction*

State courts may assert personal jurisdiction over nonresident defendants served with process only if those defendants have sufficient "minimum contacts" with the state to ensure that the assertion of jurisdiction does not violate "traditional notions of fair play and substantial justice." (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 568 (*Aquila*).)

"Minimum contacts" may support either general (also called "all-purpose") jurisdiction or specific (also called "case-linked") jurisdiction. (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 391-392; *Aquila, supra*, 148 Cal.App.4th at p. 569.) " '[W]here the defendant's contacts with the forum state are so "systematic and so continuous as to make it consistent with traditional notions of fair play and substantial justice to subject the defendant to the jurisdiction of the forum, even where the cause of action is unrelated to the contacts," ' " then the exercise of general jurisdiction is

7

proper. (*Aquila, supra*, 148 Cal.App.4th at p. 569.) " 'Specific jurisdiction results when the defendant's contacts with the forum state, though not enough to subject the defendant to the general jurisdiction of the forum, are sufficient to subject the defendant to suit in the forum on a cause of action related to or arising out of those contacts.' " (*Ibid.*) In this case, the People do not contend that general jurisdiction exists, but only that SK Trading's contacts with California are sufficient to support specific jurisdiction.

A court "may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citations]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " ' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.)

" 'On review, the question of jurisdiction is, in essence, one of law. When the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence. [Citation.] Even then, we review independently the trial court's conclusions as to the legal significance of the facts. [Citations.] When the jurisdictional facts are not in dispute, the question of whether the defendant is subject to personal jurisdiction is purely a legal question that we review de novo.' " (*Aquila, supra,* 148 Cal.App.4th at p. 568.)

2. *Analysis of Specific Jurisdiction*

Applying the three-part test, the trial court found that (1) SK Trading purposefully directed its activities at California residents by and through SK Energy, whose employees made trades on the California spot market and engaged in business in California on behalf of SK Trading; (2) the People's "claims for collusion, market manipulation, and unfair competition are

8

sufficiently related to [SK Trading's] contacts with California to warrant the exercise of specific jurisdiction"; and (3) the assertion of jurisdiction in this case would comport with fair play and substantial justice.[2]

" 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich v. Superior Court, supra*, 29 Cal.4th at p. 269; see also *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 475 [The " 'purposeful availment' requirement ensures that a defendant will not be hailed into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, [citations], or of the 'unilateral activity of another party or a third person.' "].) SK Trading emphasizes that when analyzing jurisdiction over a foreign parent corporation, courts "begin[] with 'the firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business.' " (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 430.) SK Trading's contacts with California, however, reflect more than passive investment or ownership of a subsidiary. The record establishes that SK Trading actively adopted and implemented a plan designed to increase SK Energy's profits derived from trading on the California spot markets. SK

---

[2] SK Trading's argument that the trial court applied an incorrect legal standard in determining jurisdiction improperly conflates the first two prongs of the three-part test. The trial court correctly considered first whether SK Trading intentionally engaged in economic activity directed at California and then whether that activity was sufficiently related to the allegation of the complaint to support specific jurisdiction.

Trading actively participated in the hiring and management of SK Energy's California trader and facilitated agreements between SK Energy and Vitol regarding gasoline sales in California. These are not, as SK Trading suggests, "general management activities common to parent-subsidiary relationships." In *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 552, the court emphasized that "[t]he critical acts may be taken directly by the parent or indirectly through the subsidiary, but in all events must be attributable to the parent corporation itself. Thus, the theory does not rest on a finding that the subsidiary is a sham corporation or an agent or representative of the parent. Rather, the focus is on the acts of the parent itself." Here, the record establishes that SK Trading officers personally and directly participated in making the decisions affecting the California gasoline market that the People allege violated California law.

Contrary to petitioner's argument, the trial court's reliance on *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969 (*Anglo Irish*) was sound. In that case, the court held that plaintiffs could satisfy the personal availment prong of the specific personal jurisdiction test based on activities undertaken on behalf of the non-resident defendants, if the plaintiffs established that the defendant purposefully directed those activities at the forum state. (*Id*. at p. 984.) In so holding, the court carefully distinguished the requirements for specific personal jurisdiction from the requirements to establish liability or personal jurisdiction based on agency principles. The court explained, "In our view, reliance on state substantive law of agency and alter ego to determine the constitutional limits of specific personal jurisdiction is unnecessary and is an imprecise substitute for the appropriate jurisdictional question. The proper jurisdictional question is not whether the defendant can be liable for the acts of another person or entity

10

under state substantive law, but whether the defendant has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts. That constitutional question does not turn on the specific state law requirements of alter ego or agency, although the inquiry may be similar in some circumstances." (*Id.* at p. 983; see also *Empire Steel Corp. v. Superior Court* (1961) 56 Cal.2d 823, 835 [trial court need not decide whether the parent was the alter ego of its subsidiary where "jurisdiction over [parent] has been established on the basis of the acts of the parent itself"].) As the trial court correctly reasoned, under *Anglo Irish*, it is sufficient, for purposes of the purposeful availment inquiry, that SK Trading directed SK Energy "towards California 'for the purpose of engaging in economic activity with California residents.' "

As set forth above, specific jurisdiction "requires a showing not only that the defendant has ' "purposefully directed" ' its activities at the forum but also that 'the litigation results from alleged injuries that "arise out of or relate to" those activities.' [Citation.] There must be 'a connection between the forum and the specific claims at issue.' [Citation.] 'If the operative facts of the allegations of the complaint do not relate to the [nonresident]'s contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction.' " (*Rivelli v. Hemm, supra*, 67 Cal.App.5th at p. 399.) "[T]he relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim." (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1068; see also *Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1781 (*Bristol-Myers*) ["In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy.' "]; *Ford Motor Co. v.*

11

*Montana Eighth Jud. Dist. Ct.* (2021) 141 S.Ct. 1017, 1026 ["the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum" but does not require "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."].)[3]

Here, the People's claims arise from SK Trading's involvement in the decision-making that was undisputedly directed towards the California market. While SK Trading may not have directly engaged in specific trades on the California spot market, the evidence shows that its officers were directly involved in the formulation of the policies that the complaint alleges constituted an anticompetitive scheme. As noted above, SK Trading participated in hiring Niemann as SK Energy's trader on the California spot

---

[3] As petitioner notes, in *Bristol-Myers, supra,* 137 S.Ct. at page 1781, the Supreme Court disapproved the "sliding-scale" formulation of the "substantial connection" prong of the specific personal jurisdiction test previously applied by California courts. The court explained, "Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction. For specific jurisdiction, a defendant's general connections with the forum are not enough." (*Id.* at p. 1781.) The court reaffirmed that " 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " (*Id.* at p. 1780.) This is the test applied by the trial court and which this court now applies. (See *Rivelli v. Hemm, supra*, 67 Cal.App.5th at p. 400 [noting that *Bristol-Meyers* may have cast doubt upon the California Supreme Court's "substantial connection" formulation of relatedness prong in *Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th 1054 and assessing relatedness prong "under the assumption that a 'substantial connection' between the claim and the forum contacts satisfies forum-relatedness only when consistent with a finding that the claim ' "arise[s] out of or relate[s] to" ' [citation] the forum-related activities"].)

markets and it was Niemann who ultimately undertook the challenged trades. SK Trading encouraged and participated in the formation of the "alliances" or "joint ventures" between Vitol and SK Energy that the complaint alleges were "crucial" to the anti-competitive scheme. Although the meetings between SK Trading executives and Vitol representatives did not take place in California, the record establishes that the purpose of the meetings was, at least in part, to discuss and strategize regarding the California gasoline market.

The People need not prove the merits of its case during this jurisdictional stage of the proceedings. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 118.) Whether the arrangements that arose out of the meetings attended by SK Trading executives were in fact anti-competitive as the People allege remains to be determined, but those executives admittedly participated in those discussions and their focus unquestionably was the California gasoline market. The applicable test is whether plaintiff has offered substantial evidence "that persuades the trial court that there is reason to believe that each of the named nonresident defendants might be linked to the alleged conspiracy . . . . This evidence need not be strong or conclusive, nor need plaintiffs prove each element of their causes of action. However, . . . they must provide some evidence allowing the trial court—as finder of fact on jurisdictional issues—to conclude that these particular named defendants were involved in the alleged conspiracy." (*Id.* at pp. 118-119.) SK Trading's involvement reasonably suggests that it may be linked to the alleged illegal conspiracy.

The cases cited by SK Trading are factually distinguishable. In *Bristol-Myers Squibb Co. v. Superior Court*, *supra*, 137 S.Ct. at page 1781, the Supreme Court reversed a determination by the California Supreme Court

13

that failed to identify "any adequate link between the State and the nonresidents' claims" for damages arising out of injuries allegedly caused by a nationally marketed, Bristol-Myers Squibb prescription drug called Plavix. The court explained, "As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California— and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." (*Ibid.*) The court noted that what was missing was "a connection between the forum and the specific claims at issue." (*Ibid.*) Unlike the claims in *Bristol-Myers Squibb*, the claims here are brought on behalf of California consumers for injuries relating to SK Trading's involvement in activity directed at and conducted solely in California.

SK Trading's reliance on *BBA Aviation PLC v. Superior Court, supra,* 190 Cal.App.4th 421, is similarly misplaced. In that case, the court held that a nonresident parent company was not subject to specific jurisdiction on claims arising out of its subsidiary's termination of plaintiff's employment where there was no evidence that the parent company "was involved in his employment, let alone his termination." (*Id.* at pp. 435-437.) In contrast, as discussed above, the record here establishes a sufficient connection between SK Trading's activity in California and the claims asserted in the complaint.

Contrary to petitioner's argument, our decision does not necessarily conflict with the determination by the federal district court in *In re Cal. Gasoline Spot Mkt. Antitrust Litig.* (N.D. Cal., Sept. 29, 2021, No. 20-cv-03131-JSC) 2021 U.S. Dist. Lexis 187318, that SK Trading is not subject to personal jurisdiction in California on claims arising out of similar alleged

14

misconduct. The district court held there was no personal jurisdiction based on agency and ratification theories. As discussed above, and as the court determined in *Anglo Irish,* "activities that are undertaken on behalf of a defendant may be attributed to the defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities at the forum state, regardless of the specific requirements of alter ego or agency, and . . . state law of alter ego and agency does not determine the constitutional limits to the exercise of specific personal jurisdiction." (*Anglo Irish*, *supra*, 165 Cal.App.4th at p. 974.) Plaintiff need not establish that SK Energy was acting as an agent of SK Trading so long as its claims relate to SK Trading's own activities directed to the California market.

To the extent the federal district court concluded that plaintiff failed to establish a sufficient nexus between SK Trading's activities and the claims alleged in the complaint, the court applied an inapt "but for" standard. The district court explained, " 'Plaintiffs have failed to offer evidence that supports a plausible inference that SK Trading's actions were the but for cause of Plaintiffs' injuries." (*In re Cal. Gasoline Spot Mkt. Antitrust Litig., supra,* 2021 U.S. Dist. Lexis 187318 at pp. *23-*24.) But such a showing is not required to establish specific personal jurisdiction. (*Snowney v. Harrah's Entertainment, Inc., supra*, 35 Cal.4th at p. 1068; *Ford Motor Co. v. Montana Eighth Jud. Dist. Court, supra*, 141 S.Ct. at p. 1026.) As set forth more fully above, SK Trading's activities directed at the California market have a direct nexus with the anticompetitive conduct alleged in the complaint, which is all that is necessary.

In conclusion, plaintiff has met its burden of showing that SK Trading purposefully engaged in activities that should have led it to reasonably anticipate being required to defend those activities in California legal

proceedings. SK Trading has not established that the assumption of jurisdiction over it is unfair or unreasonable. The trial court did not err in denying SK Trading's motion to quash. Accordingly, the petition for writ of mandate is denied.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

16

Filed 4/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SK TRADING INTERNATIONAL CO. LTD., <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN FRANCISCO COUNTY, <br><br>     Respondent; <br><br> THE PEOPLE, <br><br>     Real Party in Interest. | A163590 <br><br> (City & County of San Francisco Super. Ct. No. CGC-20-584456) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

THE COURT:

The opinion in the above-entitled matter filed on March 21, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date: April 12, 2022                      POLLAK, P.J.

Trial court:            San Francisco County Superior Court

Trial judge:            Honorable Andrew Y.S. Cheng

Counsel for             COVINGTON & BURLING LLP
petitioner:             Robert A. Long
                        Jeffrey M. Davidson
                        Phillip Warren
                        Hannah M. Chartoff

                        K&L GATES LLP
                        Michael E. Martinez
                        Lauren Norris Donahue

Counsel for             No appearance.
respondent:

Counsel for real        Rob Bonta, Attorney General
party in interest:      Kathleen Foote, Senior Assistant Attorney General
                        Michael W. Jorgenson, Supervising Deputy Attorney General
                        Ryan J. McCauley, Divya B. Rao, Nicole S. Gordon, and Eric
                        J. Chang, Deputy Attorneys General.